## Case No. 4,199.

### DUSAR v. MURGATROYD.

[1 Wash. C. C. 13.] [1]

·Circuit Court, D. Pennsylvania. April Term, 1803.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

WASHINGTON, Circuit Justice (charging jury). It is greatly to be wondered at, that so little satisfactory information is .to be derived on this subject, from the decisions of the courts in England, where bankrupt laws have so long existed. The cases which have been cited, are not only of modern date in general, but are inapplicable to the present case. They have generally arisen on contingent debts, debts not due at the time of the bankruptcy, or cases where the creditor had an election to sue, as for a tort, or for money had and received. There is no contingency in the present demand, no action but the present could have been brought, and the cause of it was complete before the bankruptcy. It is not easy to extract from the cases cited any principles laid down, and so uniformly adhered to by the judges, as to entitle them to that respectful consideration which I always pay them, even where they do not

bind as authority. But I think enough may be gathered from those cases, and from the general principles of law, to enable us to lay down a rule which will decide this and other cases of the kind. The question is not whether the demand is connected with contract or tort, but is the plaintiff a creditor, and does he claim a debt? These are the operative words of the statute, and their legal import must be attended to.

It is not the breach of every contract which creates a debt. If a carpenter covenant to build a house, and then refuses to do it, or does it unskilfully, though there is a contract, yet the immediate ground of the action is an injury, for which the plaintiff may be requited in damages. These damages, before they are assessed by a jury, cannot be said to constitute a debt. So in the present case, there was a contract to carry the goods of the plaintiff, safely. But the ground of the action, is for an injury sustained by the neglect of the defendant's servant. The plaintiff is seeking a reparation in damages for this injury—it is no debt, and consequently could not have enabled the plaintiff to lay such a claim before the commissioners, as to entitle him to a dividend. If so, the consequence is inevitable, that he is not barred by the certificate. The true rule seems to be "that if the original ground of action is founded in contract, but the immediate cause of action arises ex delicto, and is a claim for damages unliquidated by an express agreement; or that, as the law will not imply an agreement to pay, it is not such a claim as would be brought before the commissioners." To explain the rule: The immediate cause of action in this case arises ex delicto, from the fault of the defendant; and the damages being unliquidated by the parties, and the law creating no implied contract on the part of the defendant to pay money in consequence of it, there is no debt. But if the defendant had engaged to carry the goods safely, and on failure to pay 1000 dollars; he would on the failure have become a debtor for 1000 dollars, the liquidated damages; and it would not have been in the power of the plaintiff to receive more, though he could prove the damage to have exceeded that sum. So if plaintiff had his election to bring trespass or action for money had and received, and he waives the tort, by bringing the latter action; here the damages, though unsettled, become a debt, which the law implies a contract in the defendant ex aequo et bono to pay. So in running accounts, though the balance is unliquidated, yet the law creates a contract to pay the balance.

I was struck, upon the argument, with the summary mode of ascertaining and settling claims by jury, and at first supposed that this variance from the bankrupt laws of England, was intended to let in all kinds of claims, and to facilitate the adjustment and liquidation of them. But I am now satisfied, that this provision was only intended to give to the commissioners or the creditor, an election as to the mode of adjusting such claims for debt, as are meant by the 34th section of the law, and not to let in any claims not of this description, if due and owing at the time of the bankruptcy. Upon this point therefore, I am of opinion the defendants cannot protect themselves against the present demand by their certificate.[2]

The next point is, are the defendants liable for damages, and what should be the measure of them? The owner of the vessel is liable for all injuries, which those who employ him sustain by the misconduct, negligence, or unskilfulness of the captain. Nothing can excuse him by the common law as understood in England, but the acts of God, the public enemies, or the fault of the party complaining. The present case however does not require us to proceed upon the most rigid extent of that rule. The defendant does not show himself to be within any of the exceptions which can excuse him, and the evidence of both parties has been confined to the condition of the lumber port at the

---

[2] See the case of Utterson v. Vernon, 3 Durn. & E. [3 Term R.] 539, 4 Durn. & E. [4 Term R.] 570.

In Hammond's edition of Sir John Comyn's Digest, tit. "Bankrupt" (volume 2, p. 103), all the decisions upon the competency of a creditor claiming damages of the bankrupt to prove under the commission, are collected. Their insertion here may be useful: "1. Where the demand rests in damages, and cannot be ascertained but through the intervention of a jury, it cannot be proved; thus, for mesne profits, or a breach of covenant to do any other act, except to pay money. Doug. 584; 6 Term R. 489; 7 Term. R. 612. 2. If a demand is partly liquidated, partly not, as the difference of price upon a re-sale, creditors having a security may apply it first to the former, then to the latter, and may prove for the residue. 6 Ves. 94. 3. If a demand, in the nature of damages, be capable of being liquidated, and ascertained at the time of the bankruptcy taking place, so that a creditor can swear to the amount, he may prove it as a debt under the commission. 4. As in an action of assumpsit on a quantum meruit. Doug. 167. 5. Or if a bond be given to replace stock on a given day, and the bond is forfeited before the bankruptcy of the obligor, it may be proved: and the amount to be proved is the dividends due before the bankruptcy, and the value of the stock at the day the commission issues. Co. Bankr. Law, 149; 7 Ves. 302. 6. Or if money be paid by one partner to another (who afterwards becomes bankrupt) for the purpose of being paid over as his liquidated share of a debt to their joint creditors, and it is not so applied, it may be proved by the solvent partner as a debt under the commission. 1 East. 20. 7. So a demand in trover, if for a liquidated amount, may be proved under a commission. Doug. 168. 8. Damages liquidated by a security; thus, notes given upon compromising an action for seduction, are proveable. 15 Ves. 289. 9. Where a bankrupt, at the time of his bankruptcy, is indebted in an ascertained or ascertainable sum, it may be proved under the commission, and is discharged by the certificate. 3 Term R. 539; 4 Term R. 570. 10. Equitable demands are proveable. 1 Sch. & L. 48; 3 Ves. & B. 40. 11. Though the debt be contracted after the bankrupt quitted trade, it may be proved. 1 Ld. Raym. 287."

time the lading was taken in. Witnesses were examined to prove that it was usual and necessary to confine this port within by wedges, and secure it without, by caulking and paying over. One witness was of opinion that the inside lashing had sufficiently secured it. Upon the whole, if you are of opinion that the lumber port was not secured as is usual, and sufficiently for the safety of the cargo; or that the injury arose from the carelessness, neglect, or unskilfulness of the captain in any other respect; you will find for the plaintiff such damages as you may think right. The profit which might have been obtained, if the sugars had gone safely to Hamburg, was claimed at the opening, but was properly abandoned by the concluding counsel. The difference between the prime cost and charges, and the sales here, forms a fair measure of the damages sustained.