## Case No. 12,483.

### In re SCHUCHARDT et al.

[8 Ben. 585; [1] 15 N. B. R. 161.]

District Court, S. D. New York. Dec., 1876.

BANKRUPTCY—STRIKING OUT CLAIM — INDIVIDUAL ESTATE—REPRESENTATIONS BY PARTNER AS TO SOLVENCY OF FIRM—DAMAGES FOR TORT.

1. S. & Co., having been adjudged bankrupts, a claim was proved by A. against the individual estate of S., which estate was sufficient for the payment of individual liabilities. The claim was for the amount of a note made by S. & Co.. It was insisted by A., that, about two months before the failure of the firm of S. & Co., he was told by S. that the firm of S. & Co. were doing a safe and legitimate business and were easy, financially, and abundantly able to meet all their obligations. and that, on the strength of those representations. he discounted the note in question. On a re-examination of the claim, it appeared that the conversation between S. and A. (of which S. testified that he had no memory whatever) was on a casual meeting of the two in an omnibus; that. after the conversation, A. sent to B. & Co.. note-brokers, to whom he had previously said that he would not buy any more of S.'s paper, to know if they had any of S.'s paper: that B. & Co. said they would get some, and they went to S. & Co. and bought from them the note in question. and sold it on the same day to A. Held, that A. could have no claim against S., individually, except a claim for deceit.

2. There was no allegation in the proof of debt, and no proof in the evidence, of an intention on the part of S. to deceive A., or that he did not believe that what he said to A. was true.

3. Moreover, the claim set up was a claim for damages for a tort, and was not provable in bankruptcy, though. if it had been put in judgment against S.. that judgment might have been proved.

[Cited in Re Lachemeyer, Case No. 7,966; Re Boston & F. Iron-Works, 23 Fed. 881; 29 Fed. 784.]

4. The proof of debt, therefore, must be expunged.

---

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[In the matter of Frederick Schuchardt and Lawrence Wells, bankrupts.]

F. E. Brown, for creditors.
Carter & Eaton, for assignee.

BLATCHFORD, District Judge. On the 27th of May, 1876, John T. Agnew, one of the firm of William Agnew & Sons, made oath to and filed, on behalf of said firm a proof, of debt against the individual estate of Frederick Schuchardt, one of the bankrupts, for the sum of $25,000, with interest from November 9, 1875. The proof states that the indebtedness is upon a promissory note made by the bankrupts, Frederick Schuchardt and Lawrence Wells and one Edward L. Wells, in their firm name of Frederick Schuchardt & Sons, dated New York, July 6, 1875, for the sum of $25,000, payable four months after date to the order of themselves. It is not stated, nor does it appear by the proceedings, that the note was endorsed by Frederick Schuchardt & Sons, but it will be assumed that it was. It is not claimed that the note was endorsed by Frederick Schuchardt individually, but the proof of debt contains the following statement, as making out the claim that Frederick Schuchardt individually is indebted to William Agnew & Sons, upon said note, in the amount thereof, with interest from its maturity: "And this deponent further says, that he has known for many years last past said Frederick Schuchardt, one of said bankrupts, who was, during the summer of 1875, engaged in business at No. 40, Exchange Place, in the city of New York, with his co-partners, the bankrupt Lawrence Wells and one Edward L. Wells, under the firm name of Frederick Schuchardt & Sons; that, on or about the 17th day of July, 1875, this deponent met the said Frederick Schuchardt and had a conversation with him in reference to the business of his said firm of Frederick Schuchardt & Sons; that, in reply to deponent's inquiries, the said Frederick Schuchardt stated and represented to this deponent that his firm was doing but little business, and that on a very cautious, careful basis; that, he, Schuchardt, was going to the Profile House, White Mountains, where he intended to remain until the 1st of September, 1875; that deponent is unable to give the exact language of the said conversation, but the substance of it was, that Mr. Schuchardt represented that his said firm of Frederick Schuchardt & Sons were doing a careful business and were easy, financially, and abundantly able to meet all their obligations, and that they had a large capital and were doing a safe and legitimate business; that, on the strength of said statements, and relying upon said representations to be true, and not otherwise, this deponent thereupon, and on behalf of his said firm, discounted for cash, at the rate of five per cent per annum, said promissory note of $25,000 made by said firm of Frederick Schu-chardt Sons; and this deponent charges that, at the time said representations were made, and at the time said promissory note was made, and for a long time prior thereto, said bankrupts and said firm were hopelessly insolvent and unable to pay their debts; that, long before the maturity of said note and on or about the 11th day of September, 1875, said bankrupts and the said firm failed in business, and the said note has never been paid, nor any part thereof; that said note was discounted on the good faith of said representations, and on the personal credit of said Schuchardt; and this deponent and his said firm insist that his claim and demand be declared to be a charge against the individual estate of said bankrupt, Frederick Schuchardt." The assignee in bankruptcy, on the 7th of June, 1876, petitioned for a re-examination of said proof of debt, alleging, in his petition, that "Frederick Schuchardt is not individually liable for the payment of said note, as regards his individual estate in bankruptcy, but that said note is an indebtedness of the firm of Frederick Schuchardt & Sons, bankrupts, and that the estate of said firm is liable for its payment, and that the individual estate of said Frederick Schuchardt is not liable." Thereupon an order was made for the re-examination of said claim, and testimony was taken thereon, and the question now to be determined by the court is whether such proof of debt shall stand.

Mr. Agnew has been examined as a witness in the matter. He testifies that the conversation which he had with Mr. Schuchardt occurred in an omnibus, while they were riding up Broadway, in the city of New York, and sitting side by side. He does not remember the date of the conversation. All he will say, is that it was before the 17th of July, 1875, which was the day he bought the note. He does not remember where he entered the omnibus. At first he says that Mr. Schuchardt entered the omnibus after he did, and then he says he does not remember which one of them entered it first. The meeting was accidental. He does not remember which one of them left the omnibus first. He does not remember whether he has met Mr. Schuchardt in an omnibus since then. He cannot remember having ever spoken to Mr. Schuchardt before about the financial strength of his firm. As a reason for his having interrogated Mr. Schuchardt on that occasion on the subject of his financial strength, he testifies that he had heard that some of the paper that had been made by Schuchardt & Sons was paper made and put on the street to sell, and his firm had had a note which became due and was paid on the 18th of June, 1875, and he had concluded that he would not take any more of the paper. He states the conversation thus: "I asked him what he thought of the times. He said that they were rather critical. I asked him how they were getting on. He said, very conservative:

that they were not doing much business, and they had reduced their obligations; that they were financially comfortable and he was going to the White Mountains, to the Profile House, to spend the month of August." He says that the only question he asked Mr. Schuchardt about the business of his firm was the question as to how they were getting along; that he did not say anything to him about the rumor that he was putting his paper on the street for sale; that he did not give him any reason for asking him about his firm; and that Mr. Schuchardt said nothing about their capital or about their speculations.

It appears, by the evidence, that at one time Mr. Agnew had stated to the firm of O. M. Bogart & Co., note-brokers, that he was not going to buy any more of Schuchardt's paper. After the conversation in the omnibus, Mr. Agnew sent to O. M. Bogart & Co., to know if they had any of Schuchardt's paper. Bogart & Co. replied that they would go and get some, and they went to Schuchardt & Sons, and purchased for themselves, directly from Schuchardt & Sons, the note in question, on the 17th of July, 1875, and sold it on the same day to Mr. Agnew.

Mr. Schuchardt has been examined as a witness in the matter. He testifies, that he left New York on the 2d of July, 1875, for the Profile House, and was absent from New York continuously until the 18th of August, 1875; that he did not know of the insolvency of his firm before he so left New York; that, at the time he so left New York, he was himself a creditor of his firm and held its promissory notes to the amount of $65,000, purchased by him as an investment of his individual funds, directly from the firm, in March, 1875, and May, 1875, at the rate of six per cent per annum, and the earliest of which would mature on the 11th of September, 1875; and that he had no idea of any trouble in his firm until the 17th of August, 1875. He says that he has no recollection of any conversation with Mr. Agnew, prior to his leaving for the White Mountains, or of meeting him in an omnibus in June or July, 1875, or of seeing him in 1875, except meeting him in the street in May or June, 1875, and bowing to him and receiving a bow in return, without any conversation passing; that the failure of his firm took place on the 11th of September, 1875; that he has no recollection of having had any conversation with Mr. Agnew, or with any other person, regarding the finances of his firm, prior to his so leaving New York on the 2d of July, or of having had any inquiries made of him regarding the finances of his firm, or its business prospects, or its soundness; that people had not been in the habit of interrogating him about the financial soundness of his firm; that, to his recollection, no one had done so; that he would have considered it an offence up to the time he went to the

Profile House in July; and that he considered himself a rich man. It is claimed that the evidence shows that the firm was not solvent in May and June, 1875. On that subject Mr. Schuchardt testifies that the firm may not then have been able to pay everything on demand without realizing its assets, but that, at the time of its suspension on the 11th of September, he considered it able to pay one hundred cents on the dollar, if proper time were given; that, from his present knowledge of the assets and liabilities of the firm in July, 1875, he thinks it was solvent and able to pay its debts on the 1st of July, 1875; and that, down to the time he left New York in July, his firm met its liabilities as they matured and he then considered it solvent.

The liabilities of the firm when it suspended amounted to about $2,000,000. Its assets are not sufficient to pay its liabilities. Up to the time of their failure the bankrupts were bankers in the city of New York. The individual assets of Frederick Schuchardt are more than sufficient to pay his individual liabilities.

It is not alleged in the proof of debt that Mr. Schuchardt did not, at the time he made the alleged statements to Mr. Agnew, believe them to be true, or that he knew or believed them or any of them to be untrue, or that he made them for the purpose of misleading or deceiving Mr. Agnew. It is not alleged that he knew why Mr. Agnew sought the information; or that he knew Mr. Agnew had heard rumors about the firm's making paper to sell; or that he knew there were such rumors; or that, in fact, the firm had made any paper to sell; or that he knew Mr. Agnew had previously resolved not to buy any more of the Schuchardt paper; or that he knew Mr. Agnew was inquiring with any view to determining whether such resolve should be altered. In the proof of debt, Mr. Agnew states that Mr. Schuchardt said that the firm had a large capital, but in his testimony he does not say that Mr. Schuchardt made that statement. It is not shown that the firm were not at the time of the conversation doing a careful business, or that it was not true that they were then not doing much business, or that they were not conservative, or that they had not at that time reduced their obligations, or that they were not then abundantly able to meet all their obligations which were then outstanding, or that they were not then financially comfortable, or that they did not then have a large capital, or that they were not then doing a safe and legitimate business. It is not shown that at that time they were insolvent or unable to pay their debts. They went on, so far as appears, transacting their usual business and meeting all their obligations punctually, until the 11th of September following, and it is not shown that there was any suspicion of embarrassment until the 17th of August.

Assuming that the conversation occurred as stated by Mr. Agnew, it is established by the evidence that it occurred before the 2d of July. After that, Mr. Agnew buys this note, one not made before that time, but one made after the conversation. He does not buy it from Schuchardt & Sons, nor does he deal with them at all or pay them any money. He buys it from Bogart & Co., who owned it.

On the facts alleged in the proof of debt no cause of action for deceit arises in favor of Agnew & Sons against Mr. Schuchardt. The cause of action which will give them a claim against Mr. Schuchardt individually must be one for deceit, or else none at all. The gist of an action for deceit must be that Mr. Schuchardt intended to deceive Mr. Agnew in what he said, and intended to commit a fraud, and did not believe that what he said was true. No such thing is alleged in the proof of debt or proved in the evidence. Mr. Schuchardt was not dealing with Mr. Agnew at the time, the relation of debtor and creditor did not exist at the time, nor did either contemplate at the time the future creation of such relation, much less did Mr. Agnew disclose to Mr. Schuchardt at the time that such a relation in the future was in the contemplation of Mr. Agnew. Nor did the parties afterwards deal with each other, either directly or through agents. The case is not like one of a banker dealing with his customer face to face, over his counter, and taking his customer's money, when the banker conceals his known real condition, and the circumstances show such bad faith that the law implies fraud. Nor is the case like one of a party purchasing property under such circumstances as show an intention not to pay for it.

Independently of this, the claim set up is a claim for damages for a tort, and is not a claim provable in bankruptcy. If it had been put in judgment against Mr. Schuchardt. individually, before the adjudication, the judgment might have been proved. The claim is not one made provable by sections 5067 to 5071 of the Revised Statutes. It is not a claim created by contract and, therefore, is not a debt within section 5067. Nor is it, within that section, a demand for or on account of goods or chattels wrongfully taken, converted or withheld. Nor is it a claim for unliquidated damages arising out of a contract or promise, or on account of goods or chattels wrongfully taken, converted or withheld. Nor is it a contingent debt or a contingent liability, within section 5068. Nor can it be proved under any one of the other three sections above named. No contract can be implied between Agnew & Sons and Mr. Schuchardt, as might be the case if Mr. Schuchardt had received from Agnew & Sons money which ex æquo et bono ought to be refunded. The parties held no such relations as raise the implication, in law, of a contract. Agnew & Sons paid no money

to Mr. Schuchardt or to Schuchardt & Sons or to any agent of either. Therefore no action for money had and received could lie against Mr. Schuchardt. The action would be for deceit, for a tort, and would sound in damages, and they would not be damages arising out of a contract or promise. The claim, therefore, is not a provable one.

The proof of debt must be expunged.