## SCHALL ET AL. *v.* CAMORS ET AL., TRUSTEES OF THE BANKRUPT ESTATES OF LEMORE, BANKRUPT, AND OF CARRIERE, BANKRUPT.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 84. Argued November 17, 1919.—Decided January 5, 1920.

Section 63a of the Bankruptcy Act, defining provable debts, does not include a claim for unliquidated damages, arising out of a pure tort which neither constitutes a breach of an express contract nor results

in any unjust enrichment of the tort-feasor upon which a contract may be implied. P. 248.

Clause *b* of that section, in providing that unliquidated claims may be liquidated in such manner as the court shall direct and may thereafter be proved, refers to claims defined as provable by clause *a*, and not already liquidated, especially those founded upon open account or contract, and has not the effect of admitting all unliquidated claims, including those of tortious origin. *Id.*

Section 17 of the Bankruptcy Act, which declares that a discharge shall release the bankrupt from all of his "provable debts" except certain classes specified, refers to § 63 for the definition of what debts are provable, and does not by the excepting clause add other classes but merely limits the effect of a discharge; and this is true also of the amendment of February 5, 1903 (c. 487, § 5, 32 Stat. 797, 798). P. 251.

To permit a person defrauded by a partnership to prove his claim for damages as a *quasi* contract or equitable debt of the partnership which profited, and also of the individual partners who did not profit, by the fraud, would ignore the distinction between partnership and individual debts and the respective equities of the two classes of creditors as established by § 5 of the Bankruptcy Act. P. 254.

Worthless commercial paper, drawn by a partnership, was sold in the course of its business, by means of fraudulent representations, for a full consideration which went to the partnership and did not profit the partners as individuals save through their interests in the partnership. The firm and its members individually having been thrown into bankruptcy, *held*, that the claim of the defrauded persons, against the individual partners,—as distinct from their claim against the firm and therein their right to participate as partnership creditors in any surplus that might remain of individual assets after payment of individual debts—was a claim in tort not provable in bankruptcy.

250 Fed. Rep. 6, affirmed.

THE case is stated in the opinion.

*Mr. Ralph S. Rounds*, with whom *Mr. Eugene Congleton* was on the briefs, for petitioners:

The nature of an indebtedness incurred by individual

members of a firm for frauds perpetrated by them in firm transactions is authoritatively established in England by the case of *Ex parte Adamson; In re Collie,* L. R. 8 Ch. Div. 807. It is also well established in England that proof can be made as upon an implied contract in cases where an individual member of the firm is implicated in the misappropriation of moneys by the firm. *In re J. & H. Davison; Ex parte Chandler,* 13 Q. B. D. 50. A similar result has been reached in many cases in courts in this country. *Catts* v. *Phalen,* 2 How. 376; *Burton* v. *Driggs,* 20 Wall. 125; *In re E. J. Arnold & Co.,* 133 Fed. Rep. 789; Pomeroy, Equity Jurisprudence, 3d ed., § 1047; *Stanhope* v. *Swafford,* 77 Iowa, 594; *First State Bank* v. *McGaughey,* 38 Tex. Civ. App. 495.

The question whether a claim for pure tort is provable in bankruptcy has never been definitely decided by this court. The ultimate decision will rest upon the construction given to subsection *b* of § 63 of the Bankruptcy Act. *Crawford* v. *Burke,* 195 U. S. 176, 186; *Dunbar* v. *Dunbar,* 190 U. S. 340; *Friend* v. *Talcott,* 228 U. S. 27; *Clarke* v. *Rogers,* 228 U. S. 534. See Collier on Bankruptcy, 9th ed., p. 853; *Jackson* v. *Wauchula Mfa. Co.,* 230 Fed. Rep. 409.

Under the early English bankruptcy statutes proofs of unliquidated claims both in tort and on contract were not permitted; subsequently the rule was relaxed to permit proof of unliquidated claims arising out of contracts, but lest in making the departure it might be inferred that the rule against proof of unliquidated claims had been entirely abrogated, it was thought necessary in both the English Bankruptcy Statutes of 1869 and 1883 to provide expressly against the proof of unliquidated claims in tort. Williams, Bankruptcy Practice, 10th ed., p. 142.

Similarly, the American Bankruptcy Act of 1867, § 19, after enumerating certain debts which might be proved, at the end of the section contained the provision:

"No debts other than those above specified shall be proved or allowed against the estate."

Considered in the light of the history of these statutes, it is quite clear that the change in language in § 63a and b of our statute of 1898 was designed to abolish the old rule against proof of unliquidated claims and to permit proof of both tort and contract unliquidated claims. The rule was originally grounded in convenience and related to all unliquidated claims and there was no good reason when some unliquidated claims were admitted to proof to exclude others.

The structure of § 63 indicates plainly that "unliquidated claims" in subsection b covers an additional and distinct class of provable debts. The categories a and b were thus separated with reference only to the procedure for proving the different classes of claims.

If § 63a, subdivisions (1) to (4), embrace the whole range of provable claims, it was not necessary to add subdivision (5) embracing claims "founded upon provable debts reduced to judgments after the filing of the petition." Section 63a is not intended to be an enumeration of provable debts exclusive of all other kinds of debts. demands and claims, but is only an enumeration of claims which because of their form need no assessment of damages and can be made certain by simple computation and are therefore outside the class of claims which must "pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed."

The cases which hold that subsection b, in spite of its inclusion with paragraph a in a section entitled "Debts which may be Proved" (Brown v. United Button Co., 140 Fed. Rep. 495, affirmed 149 Fed. Rep. 48; and In re New York Tunnel Co., 159 Fed. Rep. 688), adds nothing to the enumeration of paragraph a, have admitted that under their construction all the debts enumerated in § 63a are

claims of a liquidated nature, i. e., claims which would have been admitted to proof under the old English rule, except those embraced in the last part of § 63a (4) which embraces "debts . . . founded upon an open account, or upon a contract express or implied" and in order to limit § 63b and to give it some application, have applied it to the last part of § 63a (4) irrespective of the fact that every other "debt" enumerated in § 63a is in the nature of a liquidated demand.

The construction upheld by these cases does violence to the rule of *noscitur a sociis*. This section (63) is entitled "Debts which may be Proved." The word "debts" in the title obviously means debts in the broad sense including all "debts," "demands," and "claims" provable in bankruptcy in the same sense as the word "debts" as used in § 1, subdivision 11.

Section 63b relates to the latter class of liabilities, or unliquidated claims. The word "claims" in subsection b is used in a sense distinct from that in which the word "debt" is employed in § 63a because "debts" may be proved and allowed while "unliquidated claims" must first be liquidated and thereafter proved and allowed. It seems, therefore, to follow that in the title of § 63 the word "debts" is used in the same sense as in the subject of the definition sentence, § 1 (11), and the word "debts" in § 63a and the word "claims" in § 63b are used in the same sense as those words are used in the predicate of the definition sentence § 1 (11).

When § 63 and § 17, as amended in 1903, are read together, it becomes evident that tort claims are both provable and dischargeable. The enumeration of tort claims in § 17 was considerably augmented by the amendment of 1903 and the only reasonable conclusion to be drawn from the inclusion by the amendment of certain liabilities for torts involving wrongful intent and moral turpitude is that Congress had clearly in mind that by the

original enactment tort claims, even those embracing wrongful intent and moral turpitude, were provable and dischargeable.

Even before the amendment of 1903, § 17 saved from discharge debts of the bankrupt which were "created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." *Crawford* v. *Burke*, 195 U. S. 193.

In the enumeration of debts which are exempted from a discharge contained in § 17 after the amendment of 1903 practically all are liabilities for torts. · If tort claims, including the claims enumerated in § 17, were not provable claims, they would not be discharged, and if they were not discharged because they were not provable, there was no reason for exempting them from discharge. The mere recitation of these tort claims in § 17 indicates that Congress believed that the claims therein enumerated were provable claims, and this conclusion is fortified by the reports of the congressional committee.

The amendment of § 17 in 1903 constituted a legislative construction of the act that tort claims were provable. *Tiger* v. *Western Investment Co.*, 221 U. S. 286, 308; *Baker* v *Swigart*, 199 Fed. Rep. 865, 867. It is reasonable to conclude that it was intended to put tort creditors and contract creditors on an equal basis with regard to proof, as indicated by a natural construction of § 63a and b, so that the effect of § 60 would be to make preferential transfers to each class of creditors within the four month period null and void.

If the statute is ambiguous, the court should adopt such a construction of § 17 as will make it harmonious with § 1 (11) and § 63a and b, and consistent with § 60, and the sections can only be harmonized by holding that tort claims are provable.

We believe that all the courts which have decided that tort claims are not provable under the Act of 1898 have

proceeded upon the erroneous assumption that the act, although it differed radically from the prior statute of 1867 in its wording and structure, must be made to conform to the older statute, and after a consideration of the words of the statute in order to justify the conclusion reached, have been obliged to admit, either expressly or by implication, that in § 17 as amended in 1903, Congress used the word "liabilities" inadvisedly, in order to sustain their construction; and counsel for the trustees was forced to take this position in his brief and on the argument in the court below. There is no legitimate reason why § 63*b* should be stricken down and the natural and normal meaning of its words disregarded for the purpose of raising an inconsistency between § 63 (with "*b*" eliminated by judicial construction) and § 17, solely to justify the preconceived idea that Congress did not intend that tort claims not reduced to judgment should be admitted to proof. The line of argument of the cases holding that tort claims are not provable is a very clear illustration of the logical fallacy known as reasoning in a circle. See *Brown* v. *United Button Co.*, 149 Fed. Rep. 48.

The act should be construed equitably (*Knowlton* v. *Moore*, 178 U. S. 41, 65), so as to avoid the discrimination between tort creditors who have reduced their claims to judgment and those who have not, and between tort creditors and contract creditors; so as to give tort creditors of a bankrupt corporation their only chance to participate in its assets; to prevent bankrupts from preferring their tort creditors; and to give full effect to the purpose of the act, declared by this court, "to permit all creditors to share . . . and to leave the honest debtor thereafter free." *Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U. S. 581, 591.

The Bankruptcy Act of 1898 has lost the characteristics of a traders' statute. Under the present act it has been held that claims for breach of promise of marriage are

provable (*In re Fife*, 109 Fed. Rep. 880; *In re McCauley*, 101 Fed. Rep. 223), and in the absence of the element of seduction are dischargeable. Judgments for all kinds of torts, including claims for negligence of the bankrupt or imputed to him, for assault and battery, libel and slander, nuisance, fraud, criminal conversation and seduction are provable. *Tinker* v. *Colwell*, 193 U. S. 473; *In re Freche*, 109 Fed. Rep. 620. Damages for anticipatory breach of a contract where the contract has not been broken before the bankruptcy and the bankruptcy itself is relied upon as a breach, are provable. *Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U. S. 581.

[Counsel also argued elaborately the proposition that the claims against the individual partners were provable, as *quasi* contracts or equitable debts, and that the right to prove against both firm and individual assets rested on general principles unaffected by § 5*f* and *g*, of the Bankruptcy Act.]

*Mr. Monte M. Lemann*, with whom *Mr. J. Blanc Monroe* and *Mr. D. B. H. Chaffe* were on the briefs, for respondents.

MR. JUSTICE PITNEY delivered the opinion of the court.

The transactions out of which this controversy arose took place in the years 1913 and 1914. At that time Le-More and Carriere carried on business as partners in the cities of New Orleans, Louisiana, and Mobile, Alabama. Afterwards, and in the month of May, 1914, upon an involuntary petition in bankruptcy, the firm and the individual members thereof were adjudged bankrupts in the United States District Court for the Eastern District of Louisiana, New Orleans Division, and the present respondents were elected and qualified as trustees of both the partnership and the individual estates. The present

petitioners, constituting the firm of Muller, Schall & Company, filed three proofs of claim, one against the partnership and one against each of the individual partners, all based upon the same transactions, which consisted of the purchase by claimants in the City of New York, through an agent of the bankrupt firm named Trippe, of certain bills of exchange and checks drawn by the firm upon London, Paris, and Antwerp, aggregating about $70,000, all of which were sold to petitioners for full value on the faith of certain fraudulent representations not necessary to be specified, and, at maturity, were presented for payment, dishonored and protested, and notice thereof given to the firm. At the time of these transactions Le More was in Europe and Carriere in New Orleans, and neither of them participated in the particular transactions, although both were cognizant of them and responsible for the false representations. The particular drafts and checks were not signed or indorsed by either partner, and neither profited from their sale except through his interest in the firm. The transactions occurred in the ordinary course of the firm's business, except that they were fraudulent, and the proceeds of the drafts and checks went to the credit of the firm and were used in the conduct of its business. Petitioners' claim against the partnership is based upon the drafts and checks as partnership obligations in contract, and also upon the damages sustained by reason of the fraudulent representations. The claims against the individual estates of the partners in terms demand only damages for the false representations, but are relied upon as showing also, by inference, an individual liability in *quasi* contract or equitable debt.

The trustees petitioned the District Court that the latter claims should be expunged. After a hearing the referee in bankruptcy, for reasons expressed in an elaborate opinion, ordered that the claims against the individ-

ual estates should be "expunged and disallowed," and
the rights of claimants to participate in dividends in such
estates denied. Upon review, the District Court affirmed
this order, and, upon appeal, its decree was affirmed by
the Circuit Court of Appeals. 250 Fed. Rep. 6. A writ of
certiorari brings the case here.

No question is made as to whether the referee's order, in
wholly expunging the claims against the individual
estates and denying to petitioners all participation
therein, went too far in view of the provision of § 5f of the
Bankruptcy Act (July 1, 1898, c. 541, 30 Stat. 544, 548),
that "Should any surplus remain of the property of any
partner after paying his individual debts, such surplus
shall be added to the partnership assets and be applied to
the payment of the partnership debts." If the decision be
sustained, petitioners nevertheless will be entitled, upon
establishing their claim against the partnership, to par-
ticipate as partnership creditors in any surplus that may
remain of individual assets after payment of individual
debts. What was asserted and overruled was a right to
double proof, establishing a separate and independent
liability on the part of the individual partners that would
give to the claimants, in addition to their participation in
the partnership assets, a participation in the individual
assets on equal terms with other individual creditors and
in preference to other partnership creditors.

The first and fundamental question is whether a claim
for unliquidated damages, arising out of a pure tort which
neither constitutes a breach of an express contract nor
results in any unjust enrichment of the tort-feasor that
may form the basis of an implied contract, is provable in
bankruptcy. This question was passed upon by the
referee and by the District Court; it has been most
elaborately argued *pro* and *con* in this court; its general
importance in the administration of the Bankruptcy Act
warranted a review of the case by certiorari; and hence it is

proper that we dispose of it, without regard to whether a like result might follow, upon the particular facts of the case, from a decision of any subordinate question.

Considering, therefore, the question stated: Among other definitions included in § 1 of the Bankruptcy Act is this: "(11) 'debt' shall include any debt, demand, or claim provable in bankruptcy." Section 63 runs as follows: "Debts which may be Proved.—a Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; . . . (4) founded upon an open account, or upon a contract express or implied; . . .

"b Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

In *Dunbar* v. *Dunbar*, 190 U. S. 340, 350, it was said: "This paragraph b, however, adds nothing to the class of debts which might be proved under paragraph a of the same section. Its purpose is to permit an unliquidated claim, coming within the provisions of section 63a, to be liquidated as the court should direct." But in *Crawford* v. *Burke*, 195 U. S. 176, 187, the question whether the effect of paragraph b was to cause an unliquidated claim, susceptible of liquidation but not literally embraced by paragraph a, to be provable in bankruptcy was regarded as still open.

That clause b provides the procedure for liquidating claims provable under clause a if not already liquidated, especially those founded upon an open account or a contract express or implied, is entirely clear, and has been

recognized repeatedly in our decisions. *Grant Shoe Co.* v. *Laird Co.*, 212 U. S. 445, 447–448; *Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U. S. 581, 592. Has it the further effect of admitting all unliquidated claims, including those of tortious origin?

Historically, bankruptcy laws, both in England and in this country, have dealt primarily and particularly with the concerns of traders. Our earlier bankruptcy acts invariably have been regarded as excluding from consideration unliquidated claims arising purely *ex delicto.* Act of April 4, 1800, c. 19, 2 Stat. 19; *Dusar* v. *Murgatroyd,* 1 Wash. C. C. 13; Fed. Case Nc. 4199 (8 Fed. Cas. 140); Act of August 19, 1841, c. 9, 5 Stat. 440; *Doggett* v. *Emerson,* 1 Woodb. & M. 195; Fed. Case No. 3962 (7 Fed. Cas. 821, 826); Act of March 2, 1867, c. 176, §§ 11 and 19, 14 Stat. 517, 521, 525; Rev. Stats., §§ 5014, 5067; *Black* v. *McClelland,* Fed. Case No. 1462 (3 Fed. Cas. 504, 505); *In re Schuchardt,* 8 Ben. 585; Fed. Case No. 12,483 (21 Fed. Cas. 739, 742); *In re Boston & Fairhaven Iron Works,* 23 Fed. Rep. 880.

Can it be supposed that the present act was intended to depart so widely from the precedents as to include mere tort claims among the provable debts? Its 63d section does not so declare in terms, and there is nothing in the history of the act to give ground for such an inference. It was the result of a long period of agitation, participated in by commercial conventions, boards of trade, chambers of commerce, and other commercial bodies. To say nothing of measures proposed in previous Congresses, a bill in substantially the present form was favorably reported by the Committee on the Judiciary of the House of Representatives in the First Session of the 54th Congress. Having then failed of passage, it was submitted again in the Second Session of the 55th Congress as a substitute for a Senate bill; after disagreeing votes of the two Houses, it went to conference, and as the result of a Conference

Report became law. It is significant that § 63 defining
"Debts which may be Proved" remained unchanged from
first to last, except for a slight and insignificant variance
in clause (5) in the final print, the word "interests" having
been substituted for "interest." House Rep. No. 1228,
54th Cong., 1st sess., p. 39; House Rep. No. 65, 55th
Cong., 2d sess., p. 21; Senate Doc. No. 294, 55th Cong.,
2d sess., p. 22. Evidently the words of the section were
carefully chosen; and the express mention of contractual
obligations naturally excludes those arising from a mere
tort. Since claims founded upon an open account or
upon a contract express or implied often require to be
liquidated, some provision for procedure evidently was
called for; clause *b* fulfills this function; and would have to
receive a strained interpretation in order that it should
include claims arising purely *ex delicto.* Such claims might
easily have been mentioned if intended to be included.
Upon every consideration, we are clear that claims based
upon a mere tort are not provable. Where the tortious act
constitutes at the same time a breach of contract a differ-
ent question may be raised, with which we have no present
concern; and where, by means of the tort, the tort-feasor
obtains something of value for which an equivalent price
ought to be paid, even if the tort as such be forgiven, there
may be a provable claim *quasi ex contractu.* *Crawford* v
*Burke,* 195 U. S. 176, 187; *Tindle* v. *Birkett,* 205 U. S.
183, 186; *Clarke* v. *Rogers,* 183 Fed. Rep. 518, 521–522;
affd. 228 U. S. 534, 543.

Of course, §§ 63 and 1 are to be read together. The
reference in the latter section to "provable debts," defined
in the former, would be sufficient to show this. See *Craw-*
*ford* v. *Burke,* 195 U. S. 176, 193; *Tindle* v. *Birkett,* 205
U. S. 183, 186; *Friend* v. *Talcott,* 228 U. S. 27, 39; *Clarke* v.
*Rogers,* 228 U. S. 534, 548. It is petitioners' contention
that § 17 as amended in 1903 (Act of February 5, 1903,
c. 487, § 5; 32 Stat. 797, 798), amounts to a legislative

construction admitting tort claims to proof. The section
as it stood before, and the nature of the amendment, are
set forth in the margin.[1] We are referred to the Com-
mittee's report (House Rep. No. 1698, 57th Cong., 1st
sess., pp. 3, 6) as indicating that by the law as it stood,
in the opinion of the Committee, claims created by fraud
but not reduced to judgment were discharged; reference
having been made to *In re Rhutassel*, 96 Fed. Rep. 597,
and *In re Lewensohn*, 99 Fed. Rep. 73 (affd., 104 Fed.
Rep. 1006), as contradictory decisions upon the point.
But neither the report of the Committee nor the language
of the amendment gives the least suggestion of an intent
to enlarge the description of provable claims as set forth
in § 63. On the contrary, the purpose was to limit more

---

[1] Section as originally enacted (30 Stat. 550).

"Sec. 17. Debts not Affected by a Discharge.—a A discharge in
bankruptcy shall release a bankrupt from all of his provable debts,
except such as (1) are due as a tax levied by the United States, the
State, county, district, or municipality in which he resides; (2) *are
judgments in actions for frauds, or obtaining property by false pretenses
or false representations, or for willful and malicious injuries to the person
or property of another;* (3) have not been duly scheduled in time for
proof and allowance, with the name of the creditor if known to the
bankrupt, unless such creditor had notice or actual knowledge of the
proceedings in bankruptcy; or (4) were created by his fraud, embezzle-
ment, misappropriation, or defalcation while acting as an officer or in
any fiduciary capacity."

Amendment of 1903 (32 Stat. 798) inserted in the place of clause 2
the following:

"(2) *are liabilities for obtaining property by false pretenses or false
representations, or for willful and malicious injuries to the person or prop-
erty of another, or for alimony due or to become due, or for maintenance or
support of wife or child, or for seduction of an unmarried female, or for
criminal conversation.*"

NOTE: By a further amendment (Act of March 2, 1917, c. 153, 39
Stat. 999) there was inserted after the word "female," instead of "or
for criminal conversation," the following: "*or for breach of promise of
marriage accompanied by seduction, or for criminal conversation.*"

narrowly the effect of a discharge by enlarging the class of provable debts that were to be excepted from it. By the terms of the section, both before and after amendment, the scope of the exception was qualified by the fact that the discharge released the bankrupt only from "provable debts." And if the excepting clause as amended might seem to extend to some claims not otherwise provable, its own force must be deemed to be limited by referring to § 63 for the definition of provability. It is not admissible to give to this amendment, confessedly designed to restrict the scope of a discharge in bankruptcy, the effect of enlarging the class of provable claims.

Aside from § 17 or the amendment thereof, it has been held by the federal courts generally that § 63 does not authorize the liquidation and proof of claims arising *ex delicto* and unaffected by contract express or implied. *In re Hirschman,* 104 Fed. Rep. 69, 70–71; *In re Yates,* 114 Fed. Rep. 365, 367; *In re Crescent Lumber Co.,* 154 Fed. Rep. 724, 727; *In re Southern Steel Co.,* 183 Fed. Rep. 498.

And that the amendment of § 17 does not enlarge the class of provable claims enumerated in § 63 has been recognized in several well-considered decisions of the federal courts, which have held, upon satisfactory grounds, that pure tort claims are not provable. *In re United Button Co.,* 140 Fed. Rep. 495, 499 *et seq.; s. c.* on appeal, *Brown* v. *United Button Co.,* 149 Fed. Rep. 48, 52–53; *In re New York Tunnel Co.,* 159 Fed. Rep. 688, 690. In *Jackson* v. *Wauchula Mfg. Co.,* 230 Fed. Rep. 409, 411; and again in the present case (250 Fed. Rep. 7), the Circuit Court of Appeals for the Fifth Circuit passed the question as unnecessary for the decision.

There is an argument *ab inconvenienti,* based upon the supposed danger that if tort claims be held not provable they may be preferred by failing debtors without redress

under § 60, *a* and *b* (30 Stat. 562); amended February 5,
1903, c. 487, § 13, 32 Stat. 797, 799; amended June 25,
1910, c. 412, § 11, 36 Stat. 838, 842), held to apply only to
provable claims (*Richardson* v. *Shaw*, 209 U. S. 365, 381;
see, also, *Clarke* v. *Rogers*, 228 U. S. 534, 542). We are not
much impressed. If there be danger of mischief here,
other than such as may be reached under the provisions
of § 67*e* or § 70*e* respecting fraudulent conveyances and
transfers (see *Dean* .v. *Davis*, 242 U. S. 438, 444), the
Congress may be trusted to supply the remedy by an
appropriate amendment.

It is insisted by petitioners, further, that because the
proofs of the individual claims establish the responsibility
of each partner for the frauds, they are liable *in solido* not
only as partners but individually; and that, irrespective
of whether the claims are provable in tort for the fraud,
they are provable and were properly proved both against
the individual partners and against the firm as claims in
*quasi* contract or equitable debt. But as the basis of a
liability of this character is the unjust enrichment of the
debtor, and as the facts show that no benefit accrued to
the individuals as a result of the frauds beyond that which
accrued to the firm, the logical result of the argument is
that out of one enrichment there may arise three separate
and independent indebtednesses. Doubtless it would be
conceded that a single satisfaction would discharge all
of the claims; but we are dealing with a situation where by
reason of insolvency it is not to be presumed that claims
will be satisfied in full; and, as already pointed out, the
effect of sustaining the right to double proof would be to
give petitioners not only a right to share in the partner-
ship assets on equal terms with other partnership creditors
but a participation in the individual assets on equal terms
with other individual creditors and in preference to other
partnership creditors. Section 5 of the Bankruptcy Act
(30 Stat. 547–548) establishes on a firm basis the respective

equities of the individual and firm creditors.[1]   Hence the distinction between individual and firm debts is a matter of substance, and must depend upon the essential character of the transactions out of which they arise.   And since, in this case, the tort was done in the course of the partnership business, for the benefit of the firm and without benefit to the partners as individuals, no legal or equitable claim as against the individuals that might be deemed to arise out of it, by waiver of the tort or otherwise, can displace the equities of other creditors, recognized in the Bankruptcy Act, and put petitioners in a position of equality with others who actually were creditors of the individual partners, and of preference over other firm creditors.   *Reynolds* v. *New York Trust Co.,* 188 Fed. Rep. 611, 619–620.

*Decree affirmed.*

---

[1] "Sec. 5.  Partners.—  ..   .   .

"d The trustee shall keep separate accounts of the partnership property and of the property belonging to the individual partners.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"f The net proceeds of tne partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts.   Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts.   .   .   .

"g The court may permit the proof of the claim of the partnership estate against the individual estates, and vice versa, and may marshal the assets of the partnership estate and individual estates so as to prevent preferences and secure the equitable distribution of the property of the several estates.   .   .   ."