## In re INTERNATIONAL MATCH CORPORATION.

## SVENSKA TAENDSTICKS FABRIK AKTIE-BOLAGET v. IRVING TRUST CO.

### No. 182.

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1934.

See, also, 59 F.(2d) 1012; 3 F. Supp. 443, 445.

Auchincloss & Duncan, of New York City (J. Donald Duncan, and Charles R. Lowther, both of New York City, of counsel), for appellant.

Rosenberg, Goldmark & Colin, of New York City (George K. Hourwich, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Within six months after the adjudication, the appellant filed its proof of claim. The trustee in bankruptcy moved to expunge it as insufficient on its face. Thereafter an amended proof was filed, to which the trustee renewed its objections and motion. The referee granted the motion as to both the original and amended proofs of claim, and his order has been confirmed by the District Court. The amended claim asserted five distinct items or causes of action, only three of which, however, are now insisted upon. These will be considered seriatim.

The first relates to an alleged conversion by the bankrupt of Diamond Match Company stock which belonged to the appellant. It may be considered an amendment of item V of the original proof of claim. There it was alleged on information and belief that at various times between January 1, 1924, and April 19, 1932 (the filing date of its voluntary petition), the bankrupt received possession of various stocks, bonds and other securities, the property of the appellant, which the bankrupt appropriated and disposed of, applying the proceeds thereof to its own use, and thereby becoming indebted to the appellant for moneys had and received in a total amount of $22,500,000. This stated a claim for unjust enrichment, but was concededly demurrable in not specifying with sufficient particularity the property converted by and applied to the use of the bankrupt. It is the contention of the trustee in bankruptcy that item V of the original claim was so vague and general as not to constitute a claim capable of amendment after the expiration of the statutory period for filing claims. But, in view of the well-recognized liberality allowed in the amendment of proofs of claim in bankruptcy, the contention cannot be successfully maintained. See In re Kessler, 184 F. 51 (C. C. A. 2); In re Salvator Brewing Co., 193 F. 989 (C. C. A. 2); In re Schaffner, 267 F. 977 (C. C. A. 2); Globe Indemnity Co. v. Keeble, 20 F.(2d) 84 (C. C. A. 4); In re G. L. Miller & Co., 45 F.(2d) 115 (C. C. A. 2).

Referring now to item A of the amended proof of claim, it charges that Ivar Kreuger purchased 350,000 shares of common stock of the Diamond Match Company for approximately $13,500,000, of which 72.54 per cent. was advanced by the appellant, that in February or March, 1932, the bankrupt wrongfully and without authority pledged the shares for a debt of $3,800,000 owed by the bankrupt to four banks, and that subsequently the pledgee sold the shares and has a surplus of approximately $1,400,000 which is held pursuant to stipulation to await a determination of who is entitled to it. It is further alleged that appellant has brought suit in a state court against the pledgee and others claiming damages for conversion of said stock. The claim concludes that by reason of the foregoing facts the bankrupt is indebted to the appellant in the sum of $9,792,900 with interest from March 1, 1932. In claiming this amount, the appellant seems clearly to be asserting a tort claim for conversion rather than a quasi contractual claim for unjust enrichment. Nevertheless the facts alleged do show the existence of a valid claim for unjust enrichment in a smaller amount than the sum asked. As indicated by the authorities above cited, claims in bankruptcy need not be pleaded with the technical accuracy required in a common-law declaration. See, also, In re S. W. Straus & Co., 67 F.(2d) 605 (C. C. A. 2). Where facts are alleged which show a provable claim, the proof should not be expunged because it also shows a tort liability nor because the claimant has asked to have his claim allowed in too large a sum; justice

to other creditors demands no more than that allowance of the claim be held to the proper amount.

 The trustee argues that the pendency of the state suit for conversion is a bar to proving in bankruptcy on the theory of quasi contract; that without waiver of the tort no provable claim can arise. Upon this ground the court below held the claim nonprovable. As we read the Supreme Court decisions, the claimant in bankruptcy is not forbidden to take inconsistent positions. Although he has sued in tort for conversion, he has a claim provable and hence dischargeable in bankruptcy (Crawford v. Burke, 195 U. S. 176, 193, 25 S. Ct. 9, 49 L. Ed. 147); and although he has proved in bankruptcy on the implied contract, he may later sue for fraud, an even more obvious inconsistency (Friend v. Talcott, 228 U. S. 27, 37–39, 33 S. Ct. 505, 57 L. Ed. 718). See, also, In re Menzin, 238 F. 773 (C. C. A. 2). As we understand the law, the doctrine of election of remedies between tort and quasi contract has no application to proofs of claim in bankruptcy. If the facts show an unjust enrichment of the bankrupt, the claim is provable, even though a prior suit for conversion is pending. Crawford v. Burke, supra. If Stalick v. Slack, 269 F. 123 (C. C. A. 8), is to the contrary, we cannot follow it. Cf. Johnson v. Barney, 53 F.(2d) 770 (C. C. A. 8). With respect to item A there was error in expunging the amended proof of claim.

██ The Garanta claim, item E, was rightly expunged. The appellant's brief says of this claim that it is based on moneys advanced by appellant to Garanta "which corporation was controlled by the bankrupt and because of the negligence of the bankrupt the investment was lost." This is purely a tort claim, and is not provable in bankruptcy. Schall v. Camors, 251 U. S. 239, 40 S. Ct. 135, 64 L. Ed. 247.

██ There remains for consideration item D of the amended proof of claim. This asserts that "the following claim is based upon an account stated" between the bankrupt and the appellant "directly and through the wholly owned subsidiary" of the bankrupt known as Continental Investment A. G.-Vaduz. The facts which are then alleged are a far cry from an account stated. During the years 1924 to 1932 the appellant maintained a "current account" with both the bankrupt and Continental. Prior to 1930 the balances between the appellant and the bankrupt were periodically cleared through the medium of their respective accounts with Continental.

On December 31, 1929, the bankrupt's account with the appellant showed a balance of $173,-310.33 in favor of the appellant. Shortly thereafter it was arranged by correspondence that this balance should be credited to the appellant on the books of Continental and that subsequently any items of debit and credit between the bankrupt and the appellant should be at once set up on the Continental's books "so that," according to the bankrupt's letter, "as a result of the entries thus made our account with you will always be square." This arrangement was carried out, with the result that on March 31, 1932, the current account of Continental with the appellant "shows a balance due from Continental" to the appellant in an amount of Swedish kronor "representing Swiss Francs" having a value of more than $26,000,000. This balance the appellant claims the bankrupt "is secondarily liable for in that Continental is insolvent and in addition to being a wholly owned subsidiary of the International Match Corporation acted as the agent in Europe thereof; in addition, the arrangements made between the International Match Corporation and the Swedish Match Corporation in correspondence in 1930 set forth the true understanding between the International Match Corporation and the Swedish Match Company to the effect that the entries on the books of Continental were in effect for convenience only." The above quotations show the utter confusion of thought concerning the claim attempted to be set out in item D. Whatever else may be said of it, it is not an account stated, although the appellant's argument attempts to sustain it as such and seems to assume that an "account stated" requires no more than a credit entry on the debtor's books. The most definite assertion of fact is that the Continental's books as of March 31, 1932, show a debt owing to the appellant. There is a suggestion of a claim that the bankrupt is secondarily liable for this debt, but no facts are alleged which establish such liability. There is a further and final suggestion that the entries on Continental's books were made "for convenience only." This would seem to be intended to assert by implication, in flat contradiction of what has gone before, that there is no debt owing to the appellant from Continental, and that Continental's account was really the bankrupt's. We do not think the correspondence set forth in the proof of claim is capable of such a construction. Prior to 1930 the appellant had had a separate account with Continental, as had the bankrupt. Without more than is alleged, we cannot infer that entries upon Continental's books subsequent to 1930 were not

intended to evidence legal relations between it and the appellant. While it is true that claimants in bankruptcy are not held to the niceties of formal pleading, their proofs of claim should at least allege facts from which liability on the part of the bankrupt can be seen to exist. The ambiguous and contradictory proof now under consideration shows nothing but a debt from Continental. It was properly expunged.

The order is reversed in so far as it expunged item A of the amended proof of claim; in other respects it is affirmed.