Commonwealth *v.* Grady and McNally,
Appellant.

Argued October 25, 1928.

Before Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Thomas D. McBride,* and with him *Thomas Boylan,* for appellant, cited: Hopkins v. Deaves, 2 Browne (Pa.) 93; Underwood v. Lilly, 10 S. & R. 97; Commonwealth v. Riedel, 30 Lanc. Law Review 69; Miller v. Commonwealth, 127 Pa. 122.

*Franklin E. Barr,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, cited: Vogel v. Hughes, 2 Miles 379; Silverthorn v. Hollister, 87 Pa. 431; Foster v. Passerieux, 37 Pa. Superior Ct. 307; Commonwealth v. Schlotzhauer, 22 District 700.

OPINION BY CUNNINGHAM, J., December 13, 1928:

Mary McNally appeals from an order of the court below discharging her rule to show cause why a judgment entered against her by the Commonwealth on a certain bond should not be satisfied of record.

From the record we gather this history of the case: In 1912 desertion and non-support proceedings were instituted by the Commonwealth in the Court of Quarter Sessions of Philadelphia County against appellant's nephew, Frank M. Grady, under the Act of April 13, 1867, P. L. 78, and resulted in an order directing him to pay $5 per week for the support and maintenance of his wife, Mary P., and their child Stanley. Upon the creation of the Municipal Court of Philadelphia by the Act of July 12, 1913, P. L. 711, the case seems to have been transferred to that court under the provisions of the act. By November 6, 1924, the arrearages upon this order aggregated $695 and the defendant was brought into the Domestic Relations Division of the Municipal Court by attachment. He was released from custody upon the giving of a bond to the Commonwealth in the sum of $800, upon which appellant became surety. The bond is dated November 6, 1924; recites the original order and contains the following condition: "Now, the condition of this ob-

ligation is such, that if the above-bounden Francis M. Grady shall pay $300 cash on November 20, 1924, and to pay $8 weekly, $3 to be applied to arrears, shall and do well and truly comply with the said order of said court, then the above obligation to be void," etc. The bond also contains a warrant of attorney for the confession of "judgment or judgments ...... and thereupon to issue execution for such sum or sums as shall, by affidavit filed in the said court, appear to be due by breach of the condition of this obligation; ...... and the said judgment or judgments shall afterwards remain as a security for the performance of said condition; and in case of any further breach of the said condition, execution shall issue thereupon in the same manner as before." The district attorney's office forthwith entered judgment on the bond in the court below.

The present controversy arises out of the fact that appellant claims to have discharged in full her liability as surety on the bond by having paid into the Municipal Court since November 6, 1924, the sum of $895 and into the district attorney's office an additional $100. The Commonwealth contends that none of these payments was on account of appellant's liability as surety under the bond, but were all made by her as a mere volunteer on behalf of the defendant and in partial discharge of his obligation under the order. The dates and amounts of the payments which have been received by the Municipal Court since November 6, 1924, are ascertainable from the depositions taken in support of the rule. There is no evidence that the defendant, Frank M. Grady, has paid anything since giving the bond and his present whereabouts seem to be unknown. Payments aggregating $1,170 have been received by the cashiers of the Municipal Court since the giving of the bond. Of this amount $175 was paid in by the defendant's mother on November 21, 1924, in partial payment of the $300 due from him on No-

vember 20, 1924, under the terms of the order and bond. There is no evidence that the balance of that cash payment was paid by anyone. On December 1, 1924, appellant paid $30 to one of the cashiers of the Municipal Court, and between that date and May 4, 1927, appellant, either by herself or thorugh her niece, Kathryn McBride, who acted as her messenger, paid in various amounts to the cashiers of the Municipal Court a total of $895 out of her own money. In addition, appellant, under circumstances hereinafter referred to, gave her check dated April 13, 1926, to the district attorney for $100, which check was endorsed to the order of the clerk of the Municipal Court and was by him applied to arrearages in the same way it would have been if paid by defendant himself. Receipts were given for the payments taken to the Municipal Court by appellant and her messenger. They were all in the same form as that given her for the payment of $30 on December 1, 1924, which reads: "Received from Francis [Frank] M. Grady, Thirty Dollars, on account support of Mary."

The question of how the payments shown to have been made by appellant are to be credited, i. e., whether on account of the defendant's obligation under the order, or of appellant's liability as surety on the bond, or some one way and some the other, must be determined under the evidence and by keeping in mind the respective obligations of the defendant and his surety. Appellant contends that all the payments made by her were made on account of her liability as surety on the bond, and, as they exceed the amount of its penalty, she is entitled to have the judgment satisfied. The Commonwealth contends that none of her payments was made in discharge of her liability under the bond.

Under the facts appearing from this record we cannot agree with either contention. If this bond had been signed by the defendant alone it would have con-

stituted an obligation continuing as long as the order remained in force and payments made by him would not have diminished the security in any way: Vogel v. Hughes, 2 Miles 379; Silverthorn v. Hollister, 87 Pa. 431. But we here have both a principal and a surety and the obligation of each differs from that of the other. In our opinion this controversy should be disposed of in accordance with the principles laid down by President Judge Porter in Foster v. Passerieux, 37 Pa. Superior Ct. 307. In that case one Valentour became surety on a bond in a penal sum, with a warrant of attorney to confess judgment, and reciting an agreement between Passerieux and his wife, who had separated, that Passerieux would pay her $10 per month during her lifetime. In the course of the opinion it was said: ''The defendant, Valentour, the appellee, had entered into no contract which required him to make the monthly payments to the wife of Passerieux; the recital of the agreement between the parties in the bond contains no suggestion of any such engagement upon his part, nor was any action or payment by him required to satisfy the condition of the bond. The contract, as recited, and the condition of the bond required that Passerieux alone should pay. All that Valentour undertook to do was to be liable for the penalty, in case Passerieux did not pay according to the condition of the bond. While Passerieux made the monthly payments, there was no breach of the condition. After the breach Valentour could discharge himself only by the payment of the penalty: Silverthorn v. Hollister, 87 Pa. 431.''

So here, appellant did not give bond that she would pay the $300 cash payment or the weekly payments of $8 each; all she undertook to do was to be liable for the penalty in case the defendant, or some volunteer in his behalf, did not make the payments required by the order. So long as the defendant, or

anyone for him, complied with the order there could be no breach of the condition and we agree with the court below in holding that the bond in this case "is a continuing security for the payment of the order, and until there is a breach, payments on the order, by whomsoever made, are not to be credited on the penalty of the bond in discharge of the liability of the surety." When the Commonwealth undertakes to enforce its rights under the bond by reason of a breach of the condition by the principal a new situation arises with respect to the duty and rights of the surety. The parties do not agree as to when the breach occurred in this case. It is contended on behalf of appellant that when the cash payment of $300 directed to be paid on November 20, 1924, was not paid in full a breach occurred. Whatever rights may have accrued to the Commonwealth at that time it is clear from the record that it did not attempt to enforce them in the manner provided for in the bond, namely, by issuing execution for such sum or sums as appeared "to be due by breach of the condition," until April 6, 1926. On that date a fi. fa. was issued against the defendant and his surety and the personal property of appellant was levied upon. On April 13, 1926, $100 was paid by appellant to the district attorney's office, by the check above mentioned, on account of the writ which was then stayed. Subsequently, May 4, 1927, execution was again issued against appellant; a levy was made on her real estate; an inquisition was had and a vend. ex. issued. The petition to have the judgment satisfied of record followed. Prior to the issuing of the execution a letter was written under date of December 1, 1924, by the chief clerk of the district attorney's office to appellant advising her that the defendant had not complied with his agreement to make the cash payment of $300 and the further sum of $8 per week, but had paid only $175, and that unless the balance then due

of $149 was paid promptly suit would be commenced on the bond. It is contended on behalf of appellant that all payments made by her after receipt of that notice should be credited to her liability as surety. There is no evidence that appellant paid the $149 referred to in this letter (being the balance due on the $300 cash payment, plus three weekly payments of $8 each), and we are not persuaded that this notice had the effect contended for by her counsel. The method of declaring and asserting the breach is prescribed in the bond itself, namely, issuing an execution for such sums as shall, by affidavit filed, appear to be due by reason of the failure of the defendant to comply with the terms of the order.

We agree with the court below that under the testimony in this case the issuing of the execution was the first formal assertion by the Commonwealth of a breach of the bond. We also agree with the court below that, under the circumstances disclosed by the evidence, the payments made by appellant subsequent to the issuing of the execution are legally applicable to the discharge of her liability as surety. Clearly the $100 paid April 13, 1926, was such a payment. The fact that the district attorney's office turned this amount over to the clerk of the Municipal Court, who credited it upon the arrearages of the order, cannot affect the legal rights of the surety. The court below found from the evidence ''that the district attorney knew that all payments after April 6, 1926, were made by Mary McNally, and we have no difficulty in reaching the conclusion that such payments were made on account of the surety's liability and must be so applied.'' There is evidence that the district attorney's office repeatedly notified appellant after the execution had been issued of the arrearages under the order from time to time and demanded payment; that on May 3, 1926, appellant's niece went to his office and tendered the chief clerk $50 as a

payment in behalf of appellant on the bond; that a receipt was prepared but torn up and the niece was instructed by the clerk to "go over to the Municipal Court to make this payment;" and that subsequent payments were made to the clerk of the Municipal Court by reason of this instruction. There is also evidence that when additional payments were made the clerk of the Municipal Court was requested, in behalf of appellant, to notify the district attorney's office. On the other hand, the chief clerk of the district attorney's office, when asked whether he had instructed the clerk of the Municipal Court to credit the $100 paid by appellant's check, replied, "I understand that we do not instruct the clerk of the Municipal Court so far as payments on account of the bond are concerned, but the district attorney credits that and not the clerk of the court." He admitted that he could not find any record in the district attorney's office of the crediting of this payment and when asked why he had not given some instruction to the clerk of the Municipal Court, to the effect that it was to be credited on the bond, replied, "We don't do that. We never do."

Under all the testimony we are satisfied that there was evidence to support the conclusion reached by the court below to the effect that the payments made by appellant on and after April 13, 1926, should have been applied, pro tanto, in discharge of her liability as surety. We are equally satisfied that the payments made by appellant prior to the issuing of the execution were made by reason of her relationship to the defendant and on his behalf and in discharge of his obligations under the order. The testimony seems to indicate that better coordination between the clerks in the district attorney's office and those in the Domestic Relations Division of the Municipal Court might be desirable in cases of this nature. The employe of the Municipal Court in charge of the collections on sup-

116

port orders testified that, under the prevailing practice, the Municipal Court has nothing to do with the enforcing of liability against sureties on bonds given to secure compliance with the orders; that he had no knowledge of the entry of the judgment in this case and that the entry and collection of such judgments were matters for the district attorney's office. He first stated that his office would not credit a payment made to the district attorney's office on account of liability under a bond, but admitted the receipt of the $100 payment in this case from the district attorney's office and that it had been credited as if paid by the defendant.

The testimony indicates that approximately $475 has been paid by appellant since the first execution issued and under the conclusions we have reached hei liability on the bond has been reduced from a maximum of $800 to approximately $325. The arrearages under the order amounted to $240 on August 4, 1927, but their aggregate at the present time, of course, does not appear. The Commonwealth, upon filing the affidavit or affidavits provided for in the bond, is entitled to enforce the provisions of the bond against appellant for the collection of existing arrearages, or future arrearages as they may occur, up to but not exceeding the difference between its penalty and the aggregate of the payments made by appellant since April 6, 1926.

The order discharging the rule to have the judgment satisfied of record is affirmed and the record is remitted for further proceedings not inconsistent with this opinion.