Commonwealth of Pennsylvania ex rel. Hosey v. Hosey et al., Appellant.

Argued December 10, 1930.

Before Trexler, P. J., Keller, Linn, Gaw-

THROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Claude B. Wagoner,* and with him *D. J. McTighe, Henry I. Fox* and *Charles S. Wesley,* for appellants. The discharge of the defendant surety in bankruptcy proceedings relieved him from liability of the bond: Olds v. Forrester, 126 Ia. 456, 102 N. W. 419; Gleason v. Thaw, 236 U. S. 287; In re Sullivan, 262 Fed. 574; Cobb v. Overman, 109 Fed. 65 (C. C. A. 4, 1901); In re Mahler, 105 Fed. 428; McPhee v. U. S. to Use of Montrose Hardware Co., 174 Pac. 808; Forster v. Passerieux, 37 Pa. Superior Ct. 307.

*Dennis A. O'Neill,* and with him *Maxwell Strawbridge,* for appellee.

OPINION BY KELLER, J., February 27, 1931:

We sustain the entry of judgment against this appellant, but for different reasons from those advanced by the learned court below.

The appellant on February 13, 1926 became surety on a bond to the Commonwealth, in the nature of a recognizance, in the sum of $750, conditioned that his son, William Hosey, the defendant in certain proceedings brought by his wife for the support of their minor daughter, Nancy Marie, and then pending in the Court of Quarter Sessions, comply with the or-

der of that court and pay the sum of ten dollars per week for the support of his said daughter, together with the costs of prosecution. William Hosey made no payment under said order after December 18, 1926, but no action was brought on the bond or demand made upon this appellant as surety, until the institution of this suit on April 2, 1929.

In the meantime the appellant, on May 16, 1927, filed his voluntary petition to be adjudicated a bankrupt, and on November 21, 1927 was discharged from all debts and claims made provable against his bankrupt estate which existed on May 16, 1927, the day the petition for adjudication was filed; excepting such debts as were by law excepted from the operation of a discharge in bankruptcy. The question raised by this appeal is whether the appellant was discharged from his obligation under said bond.

The learned court below held that he was not, basing its action on two grounds: (1) That the action being in the name of the Commonwealth for the penalty of a bond, forfeited for noncompliance with an order of court, it was not for a provable debt within the terms of the Bankruptcy Act and its supplements and amendments ; (2) that as a debt due the State it was not impaired or discharged by the appellant's discharge in bankruptcy. We cannot agree with either of these positions, and shall discuss them in reverse order.

(1) Decisions under prior bankruptcy acts, having different provisions, such as Com. v. Hutchinson, 10 Pa. 466 (1849) and U. S. v. Herron, 20 Wallace 251 (1873), are of no help to us, for under the statutes then in force debts due the United States or the several states were not mentioned in the act, and the principle was applied that the sovereign was not bound by the discharge, because not named in the act. But in the present bankruptcy law, the situation is otherwise. "The act takes into consideration, we think, the

whole range of indebtedness of the bankrupt, national, state or individual, and assigns the order of payment:" Guarantee T. & T. Co. v. Title Guaranty & Surety Co., 224 U. S. 152. By section 17, it is provided, *inter alia,* that "A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as (1) are due as a tax levied by the United States, the state, county, district, or municipality in which he resides." A debt due the United States, or a state may be proved against the bankrupt estate; hence it is provable, and, the act says, shall be released by the discharge of the bankrupt unless it is due as a tax levied by the United States, or state, etc. We think that the effect of this provision is to discharge every provable debt of the bankrupt to the United States, the state, county, district or municipality in which he resides, except such as is due as a tax levied by it; that the language used was purposely adopted so as to change the law as laid down under the former bankrupt acts. Of the constitutional power of Congress so to provide we have no doubt. The power to establish uniform laws on the subject of bankruptcy, with all that the grant implies, was specially given to Congress by the people and the several states in Art. I, sec. 8 of the Constitution.

(2) The lower court interpreted section 57 j of the bankruptcy act to mean that debts owing a state as a penalty or forfeiture shall not be allowed or provable. We do not so understand it. The clause reads as follows: "Debts owing to the United States, a state, a county, a district, or a municipality as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction or proceeding out of which the penalty or forfeiture arose, with reasonable costs occasioned thereby and such interest as may have accrued thereon according to law." As we read this clause it does not mean that the debt of the state, etc., shall not

be provable but that the amount allowed shall not be measured by the penalty or forfeiture, but by the amount of the pecuniary loss sustained. Thus in People v. Jersawit, 263 U. S. 493, 496, where the bankrupt had failed to pay a franchise tax and the State of New York presented a claim for the tax and for a penalty of 10% and 1% per month interest, as provided by the Statute imposing the tax, the Supreme Court of the United States held that the penalty could not be allowed, but awarded simple interest on the tax as the pecuniary loss sustained. And in U. S. v. Childs, 266 U. S. 304, where the federal government presented a claim against the bankrupt for income tax due by the bankrupt and for interest at 1% per month as fixed by the statute imposing the tax, plus a penalty of 5%, imposed by the act, the Supreme Court of the United States held that the income tax and interest claimed were provable as representing the pecuniary loss, but that the penalty of 5% could not be allowed; distinguishing People v. Jersawit, supra, because in that case the imposition of interest at 1% per month was made a part of the penalty. See also, In re Caponigri, 193 Fed. 291. So in this case had suit been brought on this recognizance, or a forfeiture been declared, prior to the filing of the bankrupt's petition, the amount allowable as a provable debt would not have been the penalty of the forfeited recognizance but the pecuniary loss due by way of monthly payments. Clause 57 j does not declare that a debt due the state by way of penalty or forfeiture, etc., shall not be provable, but that the amount allowed upon it shall be the pecuniary loss sustained, instead of the penalty.

We ground our action in sustaining the judgment on the proposition that in the circumstances above outlined the claim in suit was not a provable debt within the provisions of the bankrupt act, because it was not a fixed liability, absolutely owing, when

the appellant filed his petition to be adjudicated a bankrupt.

Section 17 refers to section 63 for the definition of what debts are provable: Schall v. Camors, 251 U. S. 239. Section 63 of the act defines a provable debt as follows: "Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; (2) due as costs taxable against an involuntary bankrupt who was at the time of the filing of the petition against him plaintiff in a cause of action which would pass to the trustee and which the trustee declines to prosecute after notice; (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of a petition in an action to recover a provable debt; (4) founded upon an open account, or upon a contract express or implied; and (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interests accrued after the filing of the petition and up to the time of the entry of such judgments." Appellant claims that the demand in suit was provable under classes (1) and (4) above. We do not so construe the law.

Under class (1) it is necessary that the claim be evidenced by a judgment or instrument in writing, which is here present, but it must be a *fixed liability, absolutely owing* at the time of the filing of the petition, and, in our opinion, this it was not. There was no debt or obligation, fixed and absolutely owing, by this appellant to either the Commonwealth or the use plaintiff. He did not absolutely bind himself or

agree to pay to the Commonwealth or to his son's wife or daughter, any fixed amount or weekly sum. Unlike an ordinary bond for the payment of money, any sum or sums advanced or paid by him on account of the weekly payment due by his son would not have been in discharge pro tanto of his liability, or a credit on the recognizance; Com. v. Grady & McNally, 95 Pa. Superior Ct. 108; Com. v. Fawner & Young, 96 Pa. Superior Ct. 606, 608. This is because there was no fixed liability, absolutely owing by him to either the Commonwealth, or the use plaintiff or her daughter. He was conditionally bound in the sum of $750, to become an enforceable obligation provided the bond or recognizance was forfeited because of the failure of his son, the principal, to make the payments as ordered by the court; but until such forfeiture there was no obligation enforceable against him, and while after such forfeiture judgment might be entered against him in the name of the Commonwealth for the penalty of the bond or recognizance, (Kiehl v. Com., 18 W. N. C. 505), the amount actually payable by him was dependent on the amount thereafter paid by the principal, and the life and minority of the daughter, and the continuance of the order of court; not exceeding the penalty: Foster v. Passerieux, 37 Pa. Superior Ct. 307. It was held by the Supreme Court of the United States, even prior to the amendment of 1903 to section 17, (clause 2), that a decree for alimony, which is similar in its character to an order of support, was not provable in bankruptcy, or barred by a discharge, because it was not a fixed liability, absolutely owing, nor founded on contract, express or implied, but on the natural and legal duty of the husband to support his wife; that it was not unconditional or unchangeable, nor in the nature of an absolute debt; Audubon v. Shufeldt, 181 U. S. 575; and a bond to the Commonwealth given to secure such payments partakes of the same characteristics, for

its provisions are affected by any reduction or modification of the order, even after breach. See also Dunbar v. Dunbar, 190 U. S. 340; Overseers of St. Martin's v. Warren, 1 B. & Ald. 492. The surety in such an obligation does not undertake to perform the act to be done by the principal, but pledges himself to be responsible up to the amount of the penalty, if the principal fails to make the payments required by the order of court; but his obligation does not become fixed until there has been not only a default by the principal, but a forfeiture of the bond, or its equivalent, a formal demand upon or suit against him in enforcement of the obligation. A mere default by the principal does not *ipso facto* create a forfeiture of the bond. This is evident from the case of Com. v. Grady & McNally, supra, where the principal made default and payments were thereafter made by the surety, but we held that until there was a demand for payment under the bond made against the surety, either by suit or otherwise, payments made by the surety were not in discharge, pro tanto, of her obligation, because her liability did not become fixed until after the forfeiture of the bond or its equivalent; but that payments made by the surety after such demand or suit, equivalent to a forfeiture of the obligation, did enure to her benefit in discharge of the penalty.

We have not ruled, as was held by the court below, that the penalty became foreited the instant there was a violation of the condition of the bond. What has been ruled by this court and by the Supreme Court is, that no formal forfeiture is necessary; that suit may be brought on the bond without a prior forfeiture: Com. v. Schmeltz, 44 Pa. Superior Ct. 377, 379; Miller v. Com., 127 Pa. 122; because the bringing of suit was the equivalent of the formal demand necessary to fix the surety's liability, in the absence of a formal forfeiture in the quarter sessions; but the obligation of the surety as a fixed liability does not

attach until there has been a forfeiture of the bond, or its alternative of a demand upon the bond against the surety, or its equivalent of an action on the bond: Com. v. Fawner & Young, supra. As there was no formal forfeiture of the bond in suit, nor demand made on the appellant until after his discharge in bankruptcy, we are of opinion that there was no fixed liability absolutely owing by him upon it sufficient to constitute it a provable debt in bankruptcy, and hence that his liability upon it was not affected by his discharge in bankruptcy. The case of In re Sullivan, 262 Fed. 574, relied on by appellant is distinguishable on two grounds: (1) Suit was brought on the bond before the bankruptcy of the surety; (2) the bond was not given to the state in desertion proceedings, but was a private bond to the wife of the bankrupt's brother, in the penalty of $100, which bound the principal and surety to pay her $10 every two weeks for ten years; and in U. S. v. Hawkins, 20 Fed. (2d) 539, the bail bond on which the bankrupt was surety had been forfeited and reduced to judgment before the surety was adjudicated a bankrupt.

There was no contract, express or implied, apart from the bond in suit, and hence it does not come within the fourth class of provable debts as defined in the 63d section of the Bankruptcy Act. The order on which it was based is not a contract, express or implied: Audubon v. Shufeldt, supra, p. 579; and the bond cannot be divorced from its terms which make it non-provable before forfeiture. See also In re Caponigri, supra.

While this disposes of appellant's contention, we are further of opinion that he failed to show that notice was given the Commonwealth that the obligation had been properly listed in his schedules as a debt; that his schedules on their face showed want

of due notice. The purpose of listing the bankrupt's debts is to afford the creditor an opportunity (1) to prove his claim, (2) to be heard as to the allowance of other claims, the election of a trustee, etc., and (3) to object to the bankrupt's discharge, if he has done anything to prevent it. Listing a debt as due to 'The Commonwealth of Pennsylvania,' without more, —no official or department named, or address given to which notice is to be sent—amounts to no notice at all. See Miller v. Guasti, 226 U. S. 170. A letter deposited in the mail addressed simply to 'The Commonwealth of Pennsylvania,' would be useless. If the claim relates to the general affairs of the Commonwealth, it should be sent to the Attorney General, at Harrisburg; if to matters within the sphere or province of the district attorney, to him; but it should be scheduled and listed in such manner that notice of the proceedings is brought to some responsible official or department: Kreitlein v. Ferger, 238 U. S. 21.

We are obliged, however, to modify the judgment. The penalty of the bond is the limit of the surety's liability: Foster v. Passerieux, supra. This is a basic matter which cannot be overlooked or disregarded in this court: Sookiasian v. Swift, 100 Pa. Superior Ct. 69; Alschuler & Weisz v. Lipkin, 84 Pa. Superior Ct. 349; Com. v. Lowenstein, 97 Pa. Superior Ct. 424; Com. v. McMaster, 88 Pa. Superior Ct. 37, 39.

The first three assignments of error are overruled. The fourth is sustained. The judgment as entered by the court is reduced from $892.50 to $750, with interest from April 2, 1929 to March 3, 1930, $38.13, or $788.13, as of date of March 3, 1930, and, as so modified or reduced, it is affirmed.