A & M RECORDS, INC., a California Corporation, CBS, Inc. (formerly known as Columbia Broadcasting System, Inc.) a New York Corporation, Virginia Wynette Jones p/k/a "Tammy Wynette" and John R. Cash p/k/a "Johnny Cash", Plaintiffs,

v.

M.V.C. DISTRIBUTING CORPORATION, a Michigan Corporation, Sicom Electronics Corporation, a Delaware Corporation, and Donald D. Merry, Defendants.

Civ. A. No. 4–72136.

United States District Court,
E. D. Michigan, S. D.

June 5, 1979.

Ronald S. Longhofer, Detroit, Mich., for plaintiffs.

Michael Pollard, Plymouth, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION FOR RELIEF FROM JUDGMENT

PHILIP PRATT, District Judge.

The motion before the Court grows out of proceedings commenced in July of 1974. The plaintiffs, A & M Records, Inc., CBS, Inc., Tammy Wynette, and Johnny Cash, sued the defendants, M.V.C. Distributing Corporation and Donald Merry, for unfair competition, specifically, record piracy. The Court entered an Order of Final Judgment awarding $120,000 plus costs to the plaintiffs on December 30, 1975. The Judgment applied only to the corporate defendants, however, because this Court found that the individual defendant, Donald Merry (hereafter "Merry"), could not be held liable. Cross-appeals were filed.

While the appeals were pending, defendant Merry on June 28, 1977 filed a voluntary petition in bankruptcy. *See In re Donald Duane Merry*, Bankruptcy No. 77–91573, E.D.Mich.S.D. On September 26, 1977 Merry was adjudicated bankrupt and his debts discharged.

Then on April 7, 1978, the Sixth Circuit rendered its decision on the pending appeals. *See A & M Records, Inc., et al. v. M.V.C. Distributing Corp., et al.*, 574 F.2d 312 (6th Cir. 1978). The Court of Appeals affirmed the judgment of the District Court except that it reversed the decision with respect to the personal liability of defendant Merry. The case was remanded with instructions that the District Court enter judgment against Merry. On May 15, 1978, the Court entered that judgment against Merry.

Now that the plaintiffs are attempting execution on the judgment, Merry comes before the Court seeking relief from judgment under F.R.C.P. 60(b)(5) by virtue of his discharge in bankruptcy.

It is uncontested that discharge in bankruptcy may justify relief from a judgment pursuant to Rule 60(b)(5). 7 Moore's Federal Practice § 60.26[2] (2d ed. 1978) at 317. The plaintiffs contend, however, that Merry is not entitled to relief from the judgment because Merry's liability or debt, as evidenced by the judgment against him, is not dischargeable in bankruptcy. Thus the pivotal question here is whether the plaintiffs' claims against Merry were discharged and released by Merry's bankruptcy.

11 U.S.C.A. § 35(a) states that "[a] discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except . . . [certain enumerated kinds]." So, in order to determine the dischargeability of Merry's liability to the plaintiffs, the Court must first inquire whether the debts are provable, and second, whether the debts fall within one of § 35(a)'s enumerated exceptions. Merry's claim to a right to relief based on discharge in bankruptcy will be unpersuasive if either his liability to the plaintiffs was not provable or if it was excluded from discharge by § 35.

## I. PROVABILITY. 11 U.S.C. § 103

The only section of the Bankruptcy Act which defines provable debts is 11 U.S.C. § 103. *See* 3A *Collier on Bankruptcy* § 63.02 (14th ed. 1975) at 1762. The defendant contends that the plaintiffs' claim is provable under any one of four categories listed in § 103(a): judgments owing at the time of filing in bankruptcy (subsection 1), contingent debts (subsection 8), implied contracts (subsection 4), or negligence claims where a legal action has been commenced (subsection 7).

### A. *Judgments Owing at the Time of Filing in Bankruptcy. § 103(a)(1).*

11 U.S.C. § 103(a)(1) states in part: "(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, . . . ."

In the case at bar, a judgment against the corporate defendants was entered on December 30, 1975. This was owing (by the corporate defendants) at the time defendant Merry filed in bankruptcy in June of 1977, but no judgment against Merry was entered until May of 1978.

Merry's attempt to take advantage of § 103(a)(1) rests on the faulty premise that the judgment against the corporate defendants somehow created a "fixed liability . . . absolutely owing" by Merry to the plaintiffs. But this Court specifically adjudged Merry to be completely *immune* from any liability. When Merry filed in bankruptcy there was a possibility he would be held liable on appeal, but a possible liability is not "fixed" or "absolutely owing".

A judgment evidencing Merry's liability did not exist until months after he filed in bankruptcy. Cases applying § 103(a)(1) have held that the liability is not provable even where a verdict against the bankrupt has been announced but not reduced to judgment at the time of filing in bankruptcy. 3A *Collier, supra* at 1829–1831. Cf. *Marotta v. American Surety Co.*, 57 F.2d 829 (1st Cir. 1932), *rev'd on other grounds*, 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466. A judgment against the bankrupt issued before (but not entered by the clerk until after) filing in bankruptcy, is not final under New York law, for example, and hence not provable under § 103(a)(1). *Coclin Tobacco Co. v. Griswold*, 408 F.2d 1338 (1st Cir. 1969), *cert. den.* 396 U.S. 940, 90 S.Ct. 373, 24 L.Ed.2d 241. A fortiori, where the only judicial determination of liability before filing in bankruptcy was that Merry was *not* liable, the eventual judgment of liability would not be provable under § 103(a)(1).

B. *Contingent Claims. § 103(a)(8).*

11 U.S.C. § 103(a)(8) makes provable "contingent debts and contingent contractual liabilities". The defendant offers a number of theories by which this clause might cover his debt to the plaintiffs.

■ First the defendant suggests that (8) may be read as including every variety of contingent claim, so that any liability which is contingent is ipso facto provable according to § 103(a)(8). Thus, defendant argues that if the Court merely considers Merry's liability to have been contingent (possible) at the time of bankruptcy, then the Court must find that the debt is provable under (8).

This interpretation of defendant is farfetched. Congress listed in § 103(a) certain limited types of fixed debts which are provable in bankruptcy. It is very unlikely that, in adding (8) in 1938, Congress meant to make every type of contingent or potential debt provable, for that would subvert the statutory purpose.

> "The term ["contingent debts"] would appear broad enough to include any kind of liability . . . Yet it is highly probable that Congress did not, despite its sweeping language, intend to declare a debt provable on the sole ground that it is contingent. The proper construction of clause (8), lest it negate the very principle of enumeration which is at the root of § 63a [11 U.S.C. § 103(a)], necessitates its limitation to those contingent claims that are in their nature provable, as this term is circumscribed by the other clauses of § 63a. 3A *Collier, supra* at 1913."

Cases interpreting (8) have followed this approach when considering the provability of a contingent claim; the courts look to some sub-section other than (8) to see whether the claim is of a provable type. Cf. *American Road Insurance Co. v. Roux,* La.App., 242 So.2d 95 (1970).

■ Defendant Merry argues that if (8)'s actual import is to make claims which fit in the other enumerated categories of 103(a) provable despite their contingency, then (8) makes his contingent liability based on a judgment provable. The suggestion is that 103(a)(1) read alone makes "fixed liabilit[ies], as evidenced by a judgment" provable, but 103(a)(8) revises this so that contingent liabilities evidenced by a judgment are provable.

This imaginative application of clause (8) in conjunction with clause (1) is seriously flawed. Clause (1), unlike the other clauses of 103(a), is expressly limited to non-contingent liabilities, to "fixed liabilities . . . absolutely owing" at the time of the bankruptcy petition. Although clause (8) appears to expand the other categories of provable claims to include contingent as well as fixed claims, it is improbable that it so modifies clause (1), since this would effectively contradict the clear language of clause (1).

Even if clause (8) modifies clause (1) to allow contingent claims under clause (1), clause (8) does not alter the requirement that there be a final *judgment* evidencing the liability prior to filing in bankruptcy. *See* 3A *Collier, supra* at 1828. As previously demonstrated, Merry's liability—fixed or contingent—was not evidenced by a judgment at the time he filed in bankruptcy.

C. *Implied Contracts. § 103(a)(4).*

11 U.S.C. § 103(a)(4) makes provable debts founded upon ". . . a contract express or implied." Since clause (8) allows proof of "contingent contractual liabilities", the defendant contends that together clauses (4) and (8) make provable a contingent liability based on an implied contract. This synthetic reading of clauses (4) and (8) is plausible, since clause (4), unlike clause (1), is not explicitly limited to non-contingent claims. So the question is whether the plaintiffs' claim against defendant Merry arose out of an implied contract.

The defendant adverts to the line of cases which have held that a tort claim not yet reduced to judgment may be provable if the claim arose from a quasi-contract, that is, a contract implied-by-law due to the unjust enrichment of the tortfeasor. *Schall v. Camors,* 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247 (1920); *Copeland v. Emroy Investors,*

*Ltd.*, 436 F.Supp. 510, 516 (D.Delaware 1977); 3A *Collier, supra* at 1894.

This judicial gloss has stretched 103(a)(4) to cover claims which involve no actual contract, either express or implied in fact. Furthermore, the sole source of the principle is the legally-created fiction of a "contractual" duty on the part of a tort-feasor to turn over any benefits he received to the injured party. However, courts have rightly declined to extend this theory to all types of cases where a tort has resulted in undeserved benefit to the tortfeasor. Although there appear to be no cases dealing with record piracy in this regard, almost all of the cases in the analogous realm of patent infringement have held that unjust enrichment claims are not provable under 103(a) on a quasi-contract theory. *Goldsmith v. Overseas Scientific Corp.*, 188 F.Supp. 530 (S.D.N.Y.1960); *In Re Paramount Publix Corp.*, 8 F.Supp. 644 (S.D.N.Y.1934); Cf. *In the Matter of Law Research Service, Inc.*, No. 71–B–598 (S.D.N.Y. January 10, 1972), (unfair competition and copyright infringement). *Contra, Schiff v. Hammond Clock Co.*, 69 F.2d 742, *rev'd on other grounds* 293 U.S. 529, 55 S.Ct. 146, 79 L.Ed. 639 (7th Cir. 1934). Judge Patterson's reasoning in the *Paramount Publix* case is instructive:

"It has accordingly been decided that claims for conversion, fraud, recovery of voidable preference, and even defalcation as trustee are provable where the bankrupt realized value from the transactions. * * *

"But this is the limit. An obligation imposed by law where there is no contract implied by law * * * does not give rise to a provable claim. * * * We must not overlook the fact that it is a statute that we are construing, and that the statutory language is 'contract, express or implied'.

"Infringement of patent is essentially a tort. * * * [T]here is nothing of a contractual character in the situation, . . ."

Judge Kaufman in *Goldsmith*, made the apt observation that:

". . . if Congress had wanted all tort claims in which an element of unjust enrichment could be found to be provable, it would have so provided in clear and unambiguous language, particularly since the Bankruptcy Act was amended subsequent to Judge Patterson's decision."

Thus, the assertion that all torts involving unjust enrichment are provable as implied contractual liabilities is an unwarranted generalization. The patent infringement cases (with one exception) reject the quasi-contract theory, and these cases are most analogous to the case at bar. In fact, the defendant's asserted principle seems to be limited to certain types of actions such as embezzlement, breach of trust, or fraud, where there is some quasi-fiduciary relationship between the wrongdoer and the injured party, or where there are at least mutual dealings between them. In those situations the fiction of a contract to restore profits is more palatable.

■ For these reasons, in the context of this motion for relief from judgment, the Court finds that the concepts of "contingent contractual liability" and "implied contract" do not include the defendant's liability to the plaintiffs for unfair competition, record piracy, and misappropriation of personalty.

#### D. *Negligence Actions.* 11 *U.S.C.* § 103(a)(7).

■ The final category of provable debts on which the defendant relies includes "the right to recover damages in any action for negligence instituted prior to and pending at the time of filing of the petition in bankruptcy." The plaintiffs, however, never claimed that the defendant was negligent; nor did the Court adjudge him negligent. This action was based on the discrete tort of unfair competition and it was held that the defendants had *intentionally* engaged in unfair competition, Memorandum Opinion and Order, May 23, 1975, at page 17. So the defendant's invocation of clause (7) is also unjustified.

## II. EXCEPTIONS TO DISCHARGEABILITY 11 U.S.C. § 35

Since the plaintiffs' claim against the defendant is not included in any category of provable debt, the defendant's discharge in bankruptcy did not affect the plaintiffs' claim. Still, there is an additional reason why the claims of plaintiffs Cash and Wynette were not dischargeable in bankruptcy.

Even if a debt is provable under some category delineated in § 103(a), the debt is not dischargeable in bankruptcy if it is specifically excluded by § 35. 11 U.S.C. § 35(a)(3) excepts from discharge debts which "have not been duly scheduled . . with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." The due scheduling requirement is defined in 11 U.S.C. § 25(a)(8) as a sworn filing listing, inter alia, all creditors ". . . showing their residences or places of business, if known, or if unknown that fact to be stated . . ."

The individual plaintiffs Cash and Wynette were not duly scheduled by defendant Merry, nor did they have actual knowledge of his bankruptcy proceedings. The defendant listed Cash and Wynette with the address 51 W. 52nd St., N.Y. N.Y. 10019, which is the address of the corporate headquarters of CBS, Inc. Yet neither of the individual plaintiffs resides or has a place of business at that address.[1] An incorrect address makes even a provable claim non-dischargeable. *See* 1A *Collier, supra* at 1688. If the defendant was ignorant of his creditors' location the statute required him to state that fact, not to give the address of some other business with whom the creditors had dealings. Finally, since the defendant made no showing or argument that the plaintiffs Cash and Wynette had actual notice of the institution of bankruptcy proceedings, the defendant's liability to these plaintiffs was not released by his bankruptcy.

For the foregoing reasons, the defendant's Motion for Relief from Judgment is DENIED.

IT IS SO ORDERED.

---

1. The mere fact that Cash and Wynette had exclusive agency contracts with CBS, Inc. does not mean that they had "places of business" at the principal office of CBS, Inc. To so enlarge the term "places of business" would be unfair to creditors; it would subvert the purpose of the Bankruptcy Act to give due notice to creditors. "Place of business" has been strictly construed, for example, to mean solely the place where a creditor has a business of his own, not where he is employed. *Higgins v. State Loan*, 72 App.D.C. 328, 114 F.2d 25 (1940).