**In the Matter of duPONT WALSTON INCORPORATED f/k/a Walston & Co., Inc., Bankrupt.**

**Claim of Esther O. KEGAN.**

**Bankruptcy No. 74–B–344.**

United States Bankruptcy Court, S. D. New York.

Jan. 27, 1981.

Hughes, Hubbard & Reed, New York City, for trustee by Emilio Cueto, New York City, of counsel.

Arutt, Nachamie & Benjamin, New York City, for claimant by Charlotte P. Arutt, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

In the administration of the estate of this erstwhile Chapter XI debtor, now a bankrupt under the relevant provisions of the 1898 Bankruptcy Act,[1] this claimant, Esther O. Kegan, filed a claim to share in the distribution of the assets of the estate. As that claim, based upon facts soon to be recounted, appeared to the trustee in bank-

ruptcy to be a non-provable, non-allowable tort claim within Section 63(a) of the Act, 11 U.S.C. (1976 ed.) § 103(a), and, *inter alia, Schall v. Camors,* 251 U.S. 239, 251, 40 S.Ct. 135, 137, 64 L.Ed. 247 (1910), he interposed this objection. Claimant refrained, and wisely so, from suggesting that tort claims were within the kinds of provable claims enumerated in Section 63(a) or that their provability in bankruptcy was not foreclosed as a litigable issue. Rather, she insists that while facially her claim sounds in tort, it nonetheless may be asserted in this bankruptcy on an implied contract theory within Section 63(a)(4) which is as follows:

"§ 63. Debts Which May Be Proved. a. Debts of the bankrupt may be proved and allowed against his estate which are founded upon ... (4) an open account, or a contract express or implied. ..."

The claimant, an attorney and business-woman, was an active trader in the stock market. She had a contractual brokerage account to buy and sell securities through the now bankrupt duPont Walston, but was denied an additional commodity broker's account because she refused to sign a waiver form entitled "Woman's Commodity Account", which waived any right to hold duPont Walston (bankrupt) liable for losses incurred by trading in commodities. This waiver was not required of the bankrupt's male customers. As a result of the refusal to open the account, the claimant alleged that she sustained substantial monetary damage in connection with certain Florida citrus groves she owned, since she could not deal in the orange juice concentrate futures market. She then went to the New York City Commission on Human Rights (Commission) resting on the Administrative Code of the City of New York and the New York State Human Rights Law which prohibit a public accommodation such as the bankrupt from discrimination based, *inter alia,* upon sex. When the Chapter XI petition was

---

1. The petition was filed under Chapter XI of the 1898 Act, Sections 301 *et seq.,* 11 U.S.C. (1976 ed.) §§ 701 *et seq.,* in 1974. The Chapter XI aborted two months later and bankruptcy administration followed. This dispute is, therefore, governed by the provisions of the 1898

Act, Section 403(a) of Title IV of the 1978 bankruptcy legislation. Pub.L.No.95-598, 92 Stat. 2549, 2683. See *Guardian Mortgage Investors v. Unofficial Noteholders, etc.,* 607 F.2d 1020 (2d Cir. 1979) at fn. 6.

filed, claimant's proceeding had reached the point where all that was required was the submission of post hearing memoranda and a decision and order by the Commission on the issue of an award of damages. The Chapter XI petition stayed any further action by claimant and the Commission. Rule 11–44(a), 415 U.S. 1033.

During the pendency of the Chapter XI proceeding, the claimant and the Commission sought a modification of the Rule 11–44(a) stay. This court, by order # 28, granted that motion for modification of the stay and, on May 13, 1974, signed order # 29, permitting the Commission to complete all necessary proceedings against the Chapter XI debtor. On May 29, 1974, du-Pont Walston was adjudged bankrupt. On April 29, 1975, the Commission rendered its decision awarding $22,855.00 to the claimant on the basis of the discriminatory treatment just recounted.

After entry of the Commission's order, claimant filed claim # 1913 for damages in the amount of the award—$22,855.00. This claim is said by the claimant to be provable under Section 63(a)(4) of the Act as a debt arising out of an implied contract which itself originated in the express contractual relationship between claimant and the bankrupt.

█ Although the trustee sets out three independent bases, any of which, he says, would compel expungement of the claim, the court concludes that the objection must be sustained on the ground that the claim is based on a tort and therefore is not provable under any of the parts of Section 63(a) enumerating claims which are. As tort

claims are not provable, they are not allowable, i. e., not permitted to a distributive share of the bankrupt's property, and the claim must therefore be stricken.

While the court begins by mining the words of Section 63(a)(4) pressed by the claimant in support of her claim, those words yield little treasure. Manifestly, the phrase "implied contract" sheds no cross-light on the circumstances in which a non-provable tort claim is transformed into a provable implied contract claim. That torts and contracts are distinct is apparent, usually painfully, to first year law students. Only the other day, the Court of Appeals for this Circuit acknowledged the difference in these words in *Alexander M. Hargrave et al. v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980):

> "The law of torts and the law of contracts are said to protect different interests. A plaintiff may recover in contract because the defendant has made an agreement, and the law thinks it desirable to be held to that agreement. Tort liability is imposed on the basis of some social policy that disapproves the infliction of a specific kind of harm irrespective of any agreement."

But while the words Congress wrote yield nothing, the dispute here does not come to this court with a clean slate for other courts have given some direction to this process of transforming a tort claim to a contract claim.[2]

Thus, the District Court in the *Matter of Paramount Publix Corp.*, 8 F.Supp. 644, 645 (S.D.N.Y.1934) said:

> the idea behind Section 63(a) of the 1898 Act that only provable claims as there described may assert entitlement to distribution of the property. Section 101(4) of the 1978 statute defines "claim" broadly so that it "permits the broadest possible relief in the bankruptcy court." See H.R.Rep. 95 595, 95th Cong., 1st Sess. 309 (1977) Sen.Rep. 95–989, 95th Cong., 2d Sess. 21 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. Section 502(b) of the Code explains which claims as defined by Section 101(4) will be "allowed" to share in the property of the estate.

---

2. From the bankrupt's standpoint, it was more advantageous to him that a claim be provable under Section 63(a) for only provable claims would be within the discharge under the lead-in sentence of Section 17(a), 11 U.S.C. (1976 ed.) § 35a regardless of whether such claims were allowable, i. e., could share in the distribution of the assets of the estate if any there were. It follows that from the claimant's standpoint the worst position would be that the claim was provable but for some reason disentitled to share in the estate.

The 1978 Code, applicable only to petitions filed on and after October 1, 1979, eliminates

"The cases comprised in ... [an implied contract] are those where the bankrupt by means of a tort or wrongful act has obtained something of value for which an equivalent price should be paid and on account of which the law will imply a promise to pay. In such instances there is, of course, no real contract on the part of the wrongdoer to pay, but there is a fictitious contract forced on him by the law to pay over the amount of the unjust enrichment."

The fashioning of such rationale as a deviation from the general rule expressed in among other places, *Schall v. Camors*, 251 U.S. 239, 251, 40 S.Ct. 135, 137, 64 L.Ed. 247 (1910), that tort claims are not provable against a bankrupt's assets, is a judicial response to those instances where the tortfeasor has been unjustly enriched by his wrong.

But the theory of unjust enrichment must be limited to certain wrongs such as embezzlement, breach of trust or fraud where there is some kind of quasi-fiduciary relationship. Then, the fiction of a contract becomes more palatable. *A & M Records, Inc. v. M. V. C. Distributing Corp.*, 471 F.Supp. 980, 984 (E.D.Mich.1979).

■ Similarly, the finding of a quasi-contractual relationship would be indispensable if a tort claim is to be treated as a claim *ex contractu* within Section 63(a)(4). But claimant can draw little comfort from this. *Black's Law Dictionary* (5th ed. 1979) at 293, "a service not always to be disregarded", *Cannon v. United States*, 288 F.2d 269 (2d Cir. 1961), Friendly, *C. J.*, dissenting, defines a quasi-contract as a legal fiction to permit recovery in contractual cases where there is no contract but where justice demands it because the tortfeasor has been unjustly enriched.

Less than a year ago the Seventh Circuit Court of Appeals observed that the language there at issue gave rise to a class of claims provable in bankruptcy in "quasi-contract" based upon the unjust enrichment of the tortfeasor. *In re Universal Research Laboratories, Inc.*, 627 F.2d 803 (7th Cir. 1980). But note the counsel of wise restraint expressed by District Judge Kaufman, as he then was, in *Goldsmith v. Overseas Scientific Corp.*, 188 F.Supp. 530 (S.D. N.Y.1960), that Congress had had ample opportunity but has not seen fit to make expressly provable all tort claims in which an element of unjust enrichment can be found.

In the dispute now before this court, claimant was awarded damages by the Commission because of the "mental anguish" she suffered as a result of the discriminatory treatment she received. Plainly there is no basis for this court to convert that claim to a contract claim thereby diminishing the attenuation of the losses of all the bankrupt's creditors holding claims which Congress intended were to be provable. The fact that the claimant had other brokerage contracts with the bankrupt is immaterial because her action was grounded in discriminatory treatment based on her sex and not on any contractual relationship. Claimant asserts no claim based on her brokerage contract or any of her commercial transactions with the bankrupt.

The claim is, pure and simple, a non-provable tort claim which by its very nature precludes some judicial legerdemain to convert it to a claim arising from an implied contract. From this it also follows that claimant's effort to place her claim into Section 63(a)(5) because it came to judgment must fail. The judgment on a non-provable claim secured after bankruptcy does not become provable unless the claim adjudicated is itself provable. The language of Section 63(a)(5) makes this so plain as to require no further comment.

The trustee's objection is sustained. Submit order.