**In re GURDA FARMS, INC., Bankrupt.**

**Delia DeLEON, et al.,**
**Plaintiffs-Appellants,**

**v.**

**GURDA FARMS, INC.,**
**Defendant-Appellee.**

**In re Stanley J. GURDA, Bankrupt.**

**Delia DeLEON, et al.,**
**Plaintiffs-Appellants**

**v.**

**Stanley J. GURDA, Defendant-Appellee.**

**No. 81 Civ. 4810.**

United States District Court,
S. D. New York.

Dec. 1, 1981.

Farmworker Legal Services of New York, Inc., Newburgh, N. Y., for plaintiffs-appellants; Howard Schell Reilly, Newburgh, N. Y., of counsel.

John C. Dipirro, Middletown, N. Y., for defendants-appellees.

SOFAER, District Judge:

This is an appeal from the denial by a bankruptcy judge of a motion for partial summary judgment. *In re Gurda Farms, Inc.*, 77–B–1389; *In re Stanley J. Gurda*, 77–B–2171 (B.C.S.D.N.Y.1979). Appellants are thirteen migrant workers who in 1976 were recruited in Texas and transported 2300 miles by a farm labor contractor named Modesto Ramirez to work on appellees' farms in Orange County, New York.

Appellants filed suit in this Court in 1976 against Ramirez, appellee Gurda, and a wholly-owned subsidiary of appellee Gurda Farms, Inc., alleging numerous violations of the Farm Labor Contractor Registration Act of 1963, as amended, 7 U.S.C. § 2041 et seq. (1976) ("FLCRA"). They complained that Gurda and the wholly-owned subsidiary intentionally engaged the services of Ramirez as a farm labor contractor without first determining that he possessed a valid certificate of registration from the United States Secretary of Labor, in violation of 7 U.S.C. § 2043(c). During the course of that suit, appellees filed voluntary petitions in bankruptcy. The FLCRA action was permitted to proceed to final judgment but not beyond. On March 12, 1979, Judge Sweet entered partial summary judgment on appellants' behalf, finding the wholly-owned subsidiary of Gurda Farms, and its director Gurda, jointly and severally liable to appellants for $6,500. *DeLeon v. Ramirez*, 465 F.Supp. 698 (S.D.N.Y.1979).

On the basis of Judge Sweet's decision, and the evidence that support it, appellants moved for partial summary judgment in the dischargeability proceedings before Bankruptcy Judge Townsend on the alternative grounds that the District Court award was not provable in bankruptcy and, if provable, was not dischargeable under the Bankruptcy Act.

On August 1, 1979, appellants' motion for partial summary judgment was denied. The Bankruptcy Court ruled that appel-

lants' claim was provable, and that issues of fact existed with respect to whether the judgment was dischargeable. Three issues were raised by this appeal from that decision: First, does this court have jurisdiction of this appeal? Second, is plaintiffs' claim provable in bankruptcy, and therefore potentially dischargeable, because it is properly characterized as an "implied contract" claim rather than one for tort? Third, if the claim was "implied contract," and therefore provable, did the Bankruptcy Judge err in not granting appellants summary judgment on the issue of dischargeability?

### I. *Jurisdiction*

The petition for bankruptcy in this case was filed in 1977, prior to the effective date of the new Bankruptcy Act, and consequently arises under the former Act. Therefore, the rules of appellate procedure adopted in the new Act do not apply. *See* Pub.L.No. 95–598, 92 Stat. 2549 (1978); 1 Collier on Bankruptcy ¶ 7.03[1] (15th ed. 1979).[1] Appellees argue that this Court lacks jurisdiction to entertain this appeal, relying on former 11 U.S.C. § 47(a), which invested the Courts of Appeals with appellate jurisdiction from decisions of "the several courts of bankruptcy." Appellants argue that jurisdiction is proper here under former 11 U.S.C. § 67(c) and Rule 801(a) of the Rules of Bankruptcy Procedure, which vest jurisdiction in District Courts for appeals from judgments or orders of a "referee." Appellees' contention is that section 47(a) governs because this is an appeal from the decision of a bankruptcy "judge," rather than that of a "referee."

Appellees' argument is misguided. The reference in former 11 U.S.C. § 47(a) to the "courts of bankruptcy" must be read in conjunction with former 11 U.S.C. § 1(10), which makes clear that "courts of bankruptcy" are in fact district courts. Further it is clear that former 11 U.S.C. § 67(a) and Rule 801 vest this Court with jurisdiction.

Judge Townsend owes his title to Rule 901(7) of the Rules of Bankruptcy Procedure enacted in 1973. See 2A Collier on Bankruptcy ¶ 39.01[7] (14th ed. 1978). That rule simply renames, for most purposes, the referee a "Bankruptcy Judge," for two identifiable reasons: First to "reflect the dignity attached to the title," id.; and second, because in some cases a District Judge may sit in lieu of a referee. The Advisory Committee notes to Rule 901 are useful in this regard:

> Since Rule 102 requires all bankruptcy cases to be referred, the judicial and administrative functions assigned the court by the Act and these rules will be performed by a referee in all but a few instances. The term "bankruptcy judge" has been employed throughout the rules as a useful designation of the referee of the court in which a case is pending or the district judge when he acts in lieu of a referee.

Clearly, the change in nomenclature effects no change in the appeals scheme, which distinguishes between decisions of referees, however denominated, and district courts. The Advisory Committee goes on to note that "[c]larity is served by distinguishing between the referee and the district judge in some rules." One such rule is Rule 801, which effectuates and modifies former 11 U.S.C. § 67(a), and provides that "[a]n appeal from a judgment or order of a referee to a district court shall be taken by filing a notice of appeal . . . ." Appeal properly lies to this Court, not the Court of Appeals.

Appellees argue further that, even if jurisdiction could exist pursuant to section 67(a) and Rule 801, "appellant never complied with the balance of the requirements set forth in 11 U.S.C. 67(c)," to wit, "[n]owhere in [appellants'] 'Notice of Appeal' is there any statement of the 'alleged errors in relation' . . . to said Order," as required by section 67(c). Letter from Appellees' Counsel to this Court at 2 (November 2, 1981).

1. Were this case governed by the appeals process instituted by the new Act, this Court would have jurisdiction of this appeal, because no appellate bankruptcy panels have been established in this circuit, and the parties have not agreed on direct appeal to the Circuit Court. Pub.L.No. 95–598, § 405(c) (1978).

■ This argument, like the one disposed of above, proceeds from misapprehension (real or feigned) of the admittedly complex procedural scheme governing bankruptcy matters under the old Act in 28 U.S.C. § 2075 (1978), Congress gave to the Supreme Court "the same general rulemaking authority in bankruptcy that it [had] already been given in civil procedure. . . ." 2A *Collier, supra,* at ¶ 30.01[1] (14th ed.). By Rule 801 the Court superceded the language in section 67(c) on which appellants rely. *See* 13 *Collier, supra,* at ¶ 801.03 (14th ed.). Although section 67(c) had required setting forth in the petition to review both the order complained of and a specification of errors therein, Rule 801 requires, in the Notice of Appeal, only "the names of all parties to the judgment or order appealed from and the names and addresses of their respective attorneys." Appellants did this well within the ten-day requirement of Rule 802. Appellants did fail, "[w]ithin 10 days of filing the notice of appeal," to "file with the referee and serve on the appellee . . . a statement of the issues he intends to present on appeal," as specified in Rule 806. But Rule 801 states that "[f]ailure of an appellant to take any step other than that specified in the first sentence [of Rule 801(a)] does not affect the validity of the appeal, but is ground only for such action as the district court deems appropriate. . . ." Appellants therefore have complied with the steps required of them to validate their appeal. *See* 13 *Collier, supra,* at ¶ 801.04 (14th ed.). Although this Court has the power to dismiss this appeal because of appellants' non-compliance with the time specified in Rule 806, dismissal is not appropriate here, since the delay has caused no prejudice.

Finally, appellees urge the Court to decline jurisdiction to review this interlocutory order, arguing that "[r]ather than continuing the seemingly endless battle of paperwork into which this matter has unfortunately digressed, this court should decline to review this matter." Letter From Appellees' Counsel, *supra,* at 3. But it will hardly terminate the "endless battle," or well serve the exigencies of judicial econo-

my, to send the case back to Bankruptcy Court for "a full trial on all the issues relating to the dischargeability of the underlying debt," *id.,* if summary judgment is appropriate at this time.

II. *Provability*

■ A discharge in bankruptcy under former 11 U.S.C. § 35(a) releases the bankrupt only from his provable debts. Generally speaking, debts or claims based on torts are not provable in bankruptcy. 3A *Collier, supra,* at ¶ 63.25 (14th ed.). Claims based on contracts, express or implied, are provable. The parties agree that there is no express contract, nor a contract implied in fact. The Bankruptcy Court held, however, that FLCRA creates a contract implied in law, and that recoveries based on it are therefore provable. It is that holding that appellants dispute.

■ Appellees appear to argue that all liability founded upon statute is considered quasi-contractual for bankruptcy purposes, as stated in *In re Vaughn,* 462 F.Supp. 1052, 1056 (N.D.Texas 1978). In *Vaughn* itself, however, two of three causes of action held *not* provable were based on statutes. Before a claim based on a statute can be rendered provable, there must be a basis for characterizing the claim as quasi-contractual. And one essential touchstone of quasi-contract is unjust enrichment. Quasi-contract is an action for restitution. 3A *Collier, supra,* ¶ 63.25 at 1894 (14th ed.). *Black's Law Dictionary's* definition of implied contract is not to the contrary. Black's in fact states that implied contracts are properly termed quasi-contracts, and goes on to define a quasi-contract in terms of unjust enrichment. *See In re duPont Walston, Inc.,* 8 B.R. 844, 847 (Bkrtcy.S.D.N.Y.1981). Appellees argue that the courts are divided as to whether unjust enrichment is a required element of an implied contract within the meaning of the Bankruptcy Act. Whatever the law may be elsewhere, however, in this district unjust enrichment is required to render a claim quasi-contractual. *See Allegaert v. Perot,* 466 F.Supp. 516, 520 (S.D.N.Y.1978); *Goldsmith*

*v. Overseas Scientific Corp.*, 188 F.Supp. 530, 531 (S.D.N.Y.1960) (Kaufman, J.); *In re Paramount Publix Corp.*, 8 F.Supp. 644, 645–6 (S.D.N.Y.1934). Indeed, although necessary, unjust enrichment is not in itself sufficient. As Bankruptcy Judge Babitt recently stated:

> [T]he theory of unjust enrichment must be limited to certain wrongs such as embezzlement, breach of trust or fraud where there is some kind of quasi-fiduciary relationship. Then, the fiction of a contract becomes more palatable.

*In re duPont Walston, Inc., supra*, 8 B.R. at 846–47 (citing *A & M Records, Inc. v. M.V.C. Distributing Corp.*, 471 F.Supp. 980, 984 (E.D.Mich.1979)).

■ The FLCRA establishes an action for damages, not for restitution. Growers are required by the Act to do only one thing, and that is to ascertain, prior to engaging the services of a farm labor con-tractor, that he has a certificate of registration from the Department of Labor. In order to obtain that certificate, a contractor must satisfy the Department of Labor that he is financially and morally sound, and to maintain his certification he must comply with all terms of the Act. The reasoning behind placing this "affirmative duty" on the grower is that he is uniquely situated to enforce the registration requirement. Senate Report No. 93–1295, *reprinted* in [1974] U.S.Code Cong. & Adm.News 6441, 6443; Statement of Bernard E. Lury, Asst. Secy. of Labor, Employment Standards Admin., Hearings before the Subcom. on Agricultural Labor, Comm. on Education and Labor, House of Representatives, 93d Cong., 1st Sess. 96 (1973). It may be true, as a theoretical matter, that growers may benefit economically from a contractor's failure to register, in that they are able to take advantage of the contractor's failure to meet the standards required by the statute. But neither the Act nor its legislative history even hints that "restitution" or unjust enrichment is relevant to liability; liability in the statute's terms is "damages." *See* 7 U.S.C. § 2050a (1976). The Act provides for actual damages or a liquidated sum in lieu of proof of actual damages. Congress in-tended to prevent very real harms to migrant laborers and their families, without requiring proof of damages or causation in particular cases which could defeat deserved recoveries. The Act is concerned with harms, not ill-gotten gains. This particularly clear with respect to growers who, according to the Senate, are also sometimes victims of the oppressive bargaining power of contractors. *See* Senate Report, *supra*, at 6442.

The cases relied upon by the Bankruptcy Judge in this matter do not support his conclusion that the claim involved is quasi-contractual. In *In re Crisp*, 521 F.2d 172 (2d Cir. 1975), the State of Connecticut sued under a state statute prescribing liability for an incapacitated person who received medical treatment at a state hospital. The Second Circuit said:

> Provision of care to an incapacitated person *is a traditional example of a situation giving rise to quasi-contractual liability* .... [The debtor's] obligation is thus an example of a liability created by statute which "is quasi-contractual in its origin and basis."

*Id.* at 174 (citing *Brown v. O'Keefe*, 300 U.S. 598, 606, 57 S.Ct. 543, 548, 81 L.Ed. 827 (1937)) (emphasis added). *Accord, In re Foust*, 3 B.C.D. 37 (E.D.Wis.1977).

■ The Bankruptcy Judge relied especially upon two cases holding back-pay awards under the National Labor Relations Act quasi-contractual and hence provable. In *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), however, the Court emphasized that plaintiffs were "wage claimants." The Court said that such a claim should be treated identically to those of other employees for back wages. *Id.* at 28–29, 73 S.Ct. at 82–83. *NLRB v. Killoren*, 122 F.2d 609 (8th Cir.), *cert. denied*, 314 U.S. 646, 62 S.Ct. 412, 86 L.Ed. 556 (1941), further explains the result. A back-pay award:

> is, in a practical and sound legal sense, nothing more or less than wages. It is compensation to which [the worker] is entitled, by reason of his continued status

under the Act as an employee, and *which the Act and the order of the Board regard him as having constructively earned. The language of the Act specifically denominates it "back-pay."*

122 F.2d at 613 (emphasis added). Thus, a back-pay award is based on the rationale of restitution of a constructive benefit conferred. Like *In re Crisp, supra,* the back-pay cases are closely analogous to the quasi-contract model. Therefore, they do not provide a rationale for labeling this FLCRA award as quasi-contractual. The damages authorized by the FLCRA encompass redress for a variety of harms inflicted on migrant workers and their families. Those harms may include loss of wages, but they also include disease, malnutrition, intimidation, mental suffering, physical harm or death from unsafe working conditions, unsafe transportation facilities, or physical abuse. *See* Senate Report, *supra,* at 6441.

The Supreme Court did say in *Nathanson* that:

> [t]he claim is provable as a debt founded upon an "implied" contract within the meaning of § 63(a)(4) of the Bankruptcy Act. It is an indebtedness arising out of an obligation imposed by statute—an incident fixed by law to the employer-employee relationship.

344 U.S. at 27, 73 S.Ct. at 82. But there is no employer-employee relationship between growers and workers. It is the very system that *prevents* such a relationship—the contractor system—that the Act sees as a potential evil and seeks to regulate. And the fact that a "relationship" exists between the parties does not automatically make quasi-contractual all incidents affixed to it by law. Deceptive trade practices statutes are not quasi-contractual. *In re Vaughn,* 462 F.Supp. 1052, 1056–57 (N.D.Tex.1978). Rule 10b–5 actions are not quasi-contractual. *E.g., Duban v. Pro-Tech Programs, Inc.,* 441 F.Supp. 467, 469 (S.D.N.Y.1977). Statutes creating recovery for patent, *In re Paramount Publix Corp.,* 8 F.Supp. 644, 646 (S.D.N.Y.1934), and copyright infringement, *Broadcast Music, Inc. v. Leisure Properties, Inc.,* 201 U.S.P.Q. 685, 686–87 (N.D.Ohio 1978), are not quasi-contractual. Statutes creating liability against an adjoining landowner who harms another's property are not quasi-contractual. *In re Terre Du Lac, Inc.,* 429 F.Supp. 1015, 1017 (E.D.Mo.1977). Record piracy is not quasi-contractual. *A & M Records, Inc. v. M.V.C. Distributing Corp., supra,* 471 F.Supp. at 983–84. Even sexual discrimination by a brokerage house against a client is not quasi-contractual. In *In re duPont Walston, Inc., supra,* a brokerage house required female clients to waive any actions against it for losses incurred in connection with certain matters, while requiring no such waiver from male clients. One female client refused to sign a waiver and therefore was prevented from using some of the brokerage house's services. She established the broker's liability for monetary losses due to transactions she was foreclosed from making, and for mental suffering, under a state anti-discrimination statute. The Bankruptcy Court said:

> The fact that the claimant had other brokerage contracts with the bankrupt is immaterial because her action was grounded in discriminatory treatment based on her sex and not on any contractual relationship . . . . The claim is, pure and simple, a non-provable tort claim which by its very nature precludes some judicial legerdemain to convert it to a claim arising from an implied contract.

8 B.R. at 847.

If one attends to the results, not just the language, of prior cases, it is fair to say that section 63(a)(4) has been interpreted in keeping with *Brown v. O'Keefe,* 300 U.S. 598, 606–07, 57 S.Ct. 543, 548, 81 L.Ed. 827 (1933). There, a state had created a remedy permitting recovery by creditors of certain banks against the bank's shareholders. It replaced similar remedies at common law based on contract theories. *See Shriver v. Woodbine Savings Bank,* 285 U.S. 467, 52 S.Ct. 430, 76 L.Ed. 884 (1932). In *Brown,* the Supreme Court stated:

> There is argument that a claim against a stockholder is not provable in bankruptcy for the reason that it is founded on a statutory liability not subject to dis-

charge. . . . True indeed it is that the liability is created by a statute, and not solely by agreement . . . . Even so, the liability, created though it is by statute, is quasi-contractual in its origin and basis. *Brown v. O'Keefe, supra,* 300 U.S. at 606, 57 S.Ct. at 548 (citations omitted).

■ The present action against growers is not fairly characterizable as "quasi-contractual in its origin and basis," as are actions by a creditor against a bank's shareholder, or by a hospital for services rendered, or by an employee for "back pay." Rather, the FLCRA claim is an intentional tort, in origin and basis:

Tort liability is imposed on the basis of some social policy that disapproves the infliction of a specific kind of harm irrespective of any agreement.

*Hargrave v. Oki Nursery,* 636 F.2d 897, 899 (2d Cir. 1980). The claim is therefore not provable or dischargeable under former 11 U.S.C. § 35(a).

III. *Dischargeability*

■ Even were the claim provable on a quasi-contract theory, the Bankruptcy Judge erred in refusing summary judgment on the ground that "liabilities for willful and malicious injuries to the person or property of another" are not dischargeable. 11 U.S.C. § 35(a). The Bankruptcy Judge correctly determined that collateral estoppel, on the findings in *DeLeon v. Ramirez, supra,* was not appropriate. To invoke collateral estoppel an issue must have been "actually and *necessarily* determined by a court of competent jurisdiction." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (emphasis added). Judge Sweet "actually" determined *facts* that give rise to the conclusion that defendants' conduct was willful and malicious; but those facts were not necessary to his decision.

■ Judge Sweet stated, and it is uncontrovertible, that "[d]efendants were fully aware of the requirements of the Act, and had registered Ramirez as a farm labor contractor" previously. 465 F.Supp. at 705. This, however, does not in itself establish that defendants knew they were violating those requirements in 1976, since the question of whether a "knowing" violation had occurred was properly irrelevant to Judge Sweet:

As used in [FLCRA] . . . "intentionally" refers to the common civil standard which holds a person liable for the natural consequences of his or her acts. . . . "Congress did not intend to require proof of specific intent or bad faith in civil actions under [FLCRA] . . . ."

465 F.Supp. at 705 (citation omitted). Being "on notice," or "fully aware" of the requirements of the Act may be relevant to this "common civil standard." But knowledge that one is breaking the law, and is therefore acting "willfully" or "maliciously," is collateral.

■ Nevertheless, the Bankruptcy Judge erred in not granting appellants summary judgment on this issue. One who violates the FLCRA knowingly is guilty of willful and malicious conduct within the meaning of section 17(a)(8). According to Collier:

An injury to person or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill will. The work "willful" means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

1A *Collier, supra,* ¶ 17.17, at 1650.4–1652 (14th ed.).

■ Congress has determined that violations of the FLCRA necessarily lead to injury, as reflected by the award of liquidated damages in lieu of determining actual damages. As to wrongfulness, a Senate Committee found that

Migrant seasonal farmworkers have long been among the most exploited groups in the American labor force. . . . [T]heir lot has historically been characterized by low

wages, protracted hours and horrid working conditions. The families and particularly the children of these workers have also suffered from ... being undereducated, ill-fed, poorly housed, and lacking even the most rudimentary health and sanitary facilities.

Senate Report, *supra*, at 6441. Congress found that unscrupulous farm labor contractors were a fundamental cause of these dismal conditions. *Id.* at 6442. By requiring that contractors register with the Department of Labor the FLCRA seeks to terminate the myriad abuses of farm workers perpetrated by contractors. *Id.* at 6443; 7 U.S.C. § 2041 (1976). Consequently, any intentional act by a grower subjecting farmworkers to an unregistered contractor is inherently wrongful, and if one does the act knowing it to be unlawful it is without excuse. On the other hand, one does not willfully disregard what one knows to be his duty if one believes that the person he is engaging is not a farm labor contractor; a person in such a situation does not know he is violating the FLCRA. The question before the Bankruptcy Court was therefore whether, on the record before it (including the opinion in *DeLeon*, appellants' Rule 3(g) statement of uncontroverted facts, appellees' counsel's "affidavit" in opposition and all legal papers) any genuine dispute existed as to a material issue of fact. The only material issue conceivably in dispute was whether appellees knew they were violating the FLCRA in 1976; that is, whether Gurda knew Ramirez was acting as a farm labor contractor as defined in the Act.

The Bankruptcy Judge quoted the relevant standards, but did not even address the summary judgment issue. With respect to the crucial question of Gurda's knowledge, if taken as admitted, the statement of material facts submitted by appellants below and Judge Sweet's opinion leave no doubt that Gurda knew Ramirez was a farm labor contractor. For example, Judge Sweet stated that "Ramirez received checks from Gurda for transporting workers," prior to Ramirez's arrival. 465 F.Supp. at 703 n.10. He found that "Ramirez was personally involved with furnishing a substantial percentage, at the very least, of the total agricultural work force at G & G Produce in 1976," *id.* at 702, and that he "received a commission based on the amount of work done by his crew members. Until at least July 1, 1976, all of the plaintiffs were members of Ramirez' work crew." *Id.* at 703. Appellees argue that, although Gurda invited Ramirez and through him his extended family to work on the farm, "[i]t was not contemplated that Ramirez would engage in the hiring and transportation of migrant workers at all." Defendants' Bankruptcy Court Brief in Opposition at 16. It is true that one who performs contractor activities with respect to "members of his immediate family" is not a farm labor contractor as defined in the FLCRA. 7 U.S.C. § 2042(b). But even Gurda's brief indicates that Gurda contemplated that Ramirez would solicit members of "his large extended family." Defendants Bankruptcy Court Brief at 16 (emphasis added). Further, Ramirez ultimately provided about fifty workers to Gurda. Once they arrived, it is reasonable to infer in the absence of an averment to the contrary that Gurda must have known the workers were not all of Ramirez's family, immediate or extended. *See* 465 F.Supp. at 702 n.6.

Under these circumstances appellee had the burden "of coming forth with evidence tending to show the existence of fact issues." *Carey Lumber Co. v. Bell*, 615 F.2d 370, 378 (5th Cir. 1980). The record clearly reflects that defendants failed to meet the requirements of Rule 56, which applies to bankruptcy proceedings. *See* 10 *Collier, supra*, at ¶ 756.02 (14th ed.). The only affidavit in opposition to the summary judgment motion was that of appellees' attorney, and it makes no averments from personal knowledge, as required in Rule 56(e). The only specifics appellees offered were the statements about "extended family members" in its brief. No rebuttal was offered to Judge Sweet's findings or to appellants' statements of fact. At oral argument in this Court appellees admitted they had offered no contrary evidence. The

conclusory and legally insufficient allegations in the brief, unsupported by a first hand affidavit, do not meet the requirements of Rule 56(e). *See S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); *DeLeon v. Ramirez, supra*, 465 F.Supp. at 701. Consequently, the Statement of Material Facts, and the record in *DeLeon*, must be taken as admitted under Rule 3(g) of this District.

■ The record makes clear that no genuine issue of material fact exists as to Gurda's knowing that Ramirez was a farm labor contractor. Given Judge Sweet's uncontroverted finding that appellees were fully aware of the requirements of the FLCRA, Gurda's intentional failure to determine whether Ramirez had a certificate of registration, therefore, was "a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally." *Tinker v. Colwell*, 193 U.S. 473, 487, 24 S.Ct. 505, 509, 48 L.Ed. 754 (1904). Hence his action is within the "willful and malicious" exception. As Judge Sweet found, conduct such as appellees' "could lead to full scale evisceration of the Act." 465 F.Supp. at 698.

Plaintiff's judgment debts under the Order For Partial Final Judgment of March 12, 1979 of this Court in *DeLeon v. Ramirez, supra*, are hereby declared to be not provable in bankruptcy, and alternatively not dischargeable in bankruptcy. The order of the Bankruptcy Court is reversed.

SO ORDERED.